Amos I. MAGGY, Plaintiff-Appellant,

v.

UNITED STATES of America et al., Defendants-Appellees.

No. 75–2401.

United States Court of Appeals, Ninth Circuit.

Sept. 15, 1977.

Michael J. Christianson, Newport Beach, Cal., argued for plaintiff-appellant.

Robert T. Duffy, Atty., U. S. Dept. of Justice, Washington, D. C., argued for defendants-appellees.

Before CHAMBERS and CHOY, Circuit Judges, and BONSAL,* District Judge.

CHAMBERS, Circuit Judge:

Appellant Maggy filed suit against the United States for refund of $24.32 which he had paid in partial satisfaction of a $32,-060.49 tax penalty assessed against him pursuant to 26 U.S.C. §§ 6671–72. He additionally prayed for indemnification from third party defendants for any further liability on the balance of the assessments. After a trial to the court, judgment in the amount of $32,036.17 was entered in favor of the United States on its counterclaim against Maggy for the unpaid balance of the assessment. Maggy's indemnification claim was also denied.

Under 26 U.S.C. §§ 3101–02, employers are required to regularly withhold Social Security and FICA taxes from their employees' wages. These taxes are collected from the employers quarterly. The quarter involved in this suit extended from May through July, 1967. The money collected by employers for these taxes is required to be held in trust by them until the end of the quarter pursuant to 26 U.S.C. § 7501(a). Since the government has no recourse against the individual employees if these taxes are not paid at the end of each quarter, 26 U.S.C. § 6672 imposes a 100 percent penalty tax for the willful failure "to collect, truthfully account for, and pay over" these taxes by the "person required" to do so. Maggy's liability arose from the following facts.

On April 6, 1967, Maggy was elected president, director, and chairman of the board of Edmap Industries, Inc. (Edmap), of which he and his wife owned 40 percent of the outstanding shares. Maggy retained the position of president until June 22, 1967.

* The Honorable Dudley B. Bonsal, United States District Judge, Southern District of New York, sitting by designation.

During that time, Edmap was in constant financial difficulty, as it had been since its inception. The Edmap bank account for the period showed an average daily balance of $18.00, and a minimum balance reflecting an overdraft. Maggy was advised at least weekly of Edmap's financial condition, and was told at least twice that this account, which contained the taxes withheld from the employees, was overdrawn.

On June 22, 1967, under threat of a total strike by all Edmap executives and employees, Maggy agreed to a meeting to discuss internal reorganization. This meeting resulted in Maggy's signing a voting trust agreement under which his shares of Edmap were to be voted by nine trustees. While no shares of stock were ever transferred to this trust, and Maggy claimed to doubt its legal validity, the agreement by its terms acted as a transfer of the stock pending its delivery. Maggy resigned as president of Edmap but remained chairman of the board. The June 22 meeting also resulted in the creation of a financial committee which, though technically under the authority of the board of directors, as a practical matter did not report to it. This committee made the daily decisions as to which of Edmap's creditors were to be paid. Maggy remained an authorized signator on the Edmap bank accounts, and his signature alone was sufficient to withdraw funds until July 18, 1967. Maggy, however, allegedly thought his name was removed as an authorized signator on June 22, 1967, the date of the organizational shake-up. Maggy retained his offices and continued to work for Edmap during the period following June 22.

On the date Maggy resigned as president, there were adequate funds in the Edmap account to pay the withholding taxes which had accrued to that date. On July 7, all members of the board of directors were informed of the amount of taxes owed and of the additional debts owed to other Edmap creditors. When Maggy returned from a two-week vacation in July, he was informed that withheld taxes in the amount of $32,060.49 were due on July 31. Maggy took no action on this information, and did not bring it to the attention of the board of directors.

On August 2, 1967, Maggy was reelected president of Edmap. As of July 31, the Edmap account contained $6,417.12, and deposits totalling $3,567.18 were made on August 1 and 4. After his reelection, Maggy made no attempt to pay any of these funds to the United States. He ultimately was assessed for the full amount of the taxes.

For liability to arise under 26 U.S.C. § 6672, our court has held that the party assessed with the penalty must meet two requirements. He must be a "responsible person": one who is required "to collect, truthfully account for, and pay over" the tax. And he must willfully refuse to pay it. *Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976). The district court found that at all times relevant to the case, Maggy was aware that taxes were being withheld from the employees' wages; was aware that these amounts were due to the United States; was a responsible person within the ambit of section 6672 with the power to pay these taxes; and had made no attempt to pay the taxes due on July 31 for the preceding quarter. In addition, the court found that from April to December, 1967, when Edmap ceased doing business, Maggy was aware that creditors of Edmap were paid in preference to the United States, and that he was an active participant in the failure to pay the withheld taxes to the United States. Maggy essentially argues on appeal that his position at Edmap was totally meaningless after June 22, and that since there were sufficient funds in the Edmap account on that date to pay the taxes when accrued, he should not be held liable for the fact that the account was deficient on July 31.

■ A "responsible person" subject to the reach of 26 U.S.C. § 6672 is one who has the final word on which bill should or should not be paid. *Bloom v. United States*, 272 F.2d 215 (9th Cir. 1959), *cert. denied*, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). The district court found Maggy to be a responsible person for

the entire quarter because he remained chairman of the board of directors and a signator on Edmap's accounts until July 18. Under California law and Edmap's by-laws, the board of directors had ultimate control over all aspects of the corporation and its personnel. Additionally, the district court found that it was contrary to California law for the board of directors to totally abdicate all financial responsibility for a corporation to a finance committee, as Maggy alleges occurred here.

In *United States v. Graham*, 309 F.2d 210 (9th Cir. 1962), we held that one who was solely a member of the board of directors, and was not an executive officer, employee or signator of the corporate bank accounts, could be a responsible person under the statute. The term "responsible person" was held to encompass "all those so connected with a corporation as to be responsible for the performance of the act" relating to the violation. *Id.* at 212. On our facts, however, we feel that Maggy can only be said to have been a responsible person until June 22, 1967. While he remained chairman of the board of directors and an unknowing signator on the Edmap account until July 18, the evidence indicates that after the June 22 meeting, Maggy was stripped of all significant authority over Edmap. The board of directors indeed may have retained legal responsibility for the acts of the finance committee, but the fact remains that Maggy was kept isolated from the committee's activities and decisions.

■ Our review of the district court's finding of fact with respect to Maggy's status as a responsible person for purposes of 26 U.S.C. § 6672 is subject to the standards of Federal Rule of Civil Procedure 52(a), and thus it cannot be set aside unless it is "clearly erroneous." *See Bloom, supra* at 223. From the record before us, we cannot conclude that Maggy had the final word on what corporate bills were to be paid after June 22. We are left with the definite and firm conviction that the district court committed a mistake in finding that Maggy was a responsible person for the entire relevant quarter. *See, e. g.,* *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Anderson v. United States*, 555 F.2d 236, 237 (9th Cir. 1977). In light of this error, Maggy's liability for the withheld quarterly taxes in issue can only extend from May 1 to June 22.

■ Moreover, Maggy can only be held liable for the taxes collected during this period if his failure to pay them over was willful. Maggy contends that willfulness is lacking here because there were adequate funds in the Edmap account on June 22 to cover the taxes withheld up to that date. The willfulness requirement is met when a responsible officer voluntarily, consciously, and intentionally causes his corporation to pay creditors out of withheld funds while he is aware that such funds are owed to the United States. *Bloom v. United States, supra* ; *see Hartman v. United States*, 538 F.2d 1336 (8th Cir. 1976). Willfulness can be proven by the preference of other creditors over the United States either before or after the actual due date for remittance of the taxes.

■ In *Newsom v. United States*, 431 F.2d 742 (5th Cir. 1970), it was held that a responsible person's actions prior to the due date may evidence willfulness when that person knows that the withheld funds are being used for other corporate purposes, even if he or she thoroughly expects sufficient funds to be available for payment when the due date actually arrives. Since the average daily balance in the Edmap account between April 1 and June 22 was $18.00, and the account had been overdrawn at least twice, Maggy clearly was aware that during the period for which he was "responsible" corporate funds were at times lower than the amount of taxes withheld. By allowing this condition to exist during the pre-June 22 period, Maggy risked subjecting himself to liability if, as in fact happened, insufficient funds were available on July 31 to cover the taxes collected for the preceding quarter.

In addition, when Maggy resumed control of Edmap in August, he made no efforts to pay the taxes due to the United States with

the funds then available in the Edmap account or which were received during the following week. In *Teel v. United States, supra,* we held that willfulness was present when responsible persons of a corporation which had gone into receivership used funds from the sales of inventory to purchase new merchandise, knowing that taxes were owing to the United States. Despite the receivership status, the funds which came into the corporation became immediately subject to a trust or lien in favor of the United States for the unpaid withholding taxes, and the appellants were liable for all past withholding taxes collected while they were responsible persons of the corporation. Maggy's actions when he resumed control of Edmap thus reinforce our finding of willfulness.

The case of *Dudley v. United States,* 428 F.2d 1196 (9th Cir. 1970), which Maggy argues disavows *Newsome, supra,* in this circuit, is inapposite. The cases are not incompatible, and the mitigating factors present in *Dudley*—the sending of the check for the Internal Revenue Service, the government's delay in depositing the check, and the subsequent payment of other corporate creditors without knowledge that the check to the United States had been dishonored—are not present here.

For these reasons, we find that Maggy is liable for the amount of taxes required to be withheld from May 1 to June 22, 1967. Maggy's statement that he was a passive participant in the failure to pay the taxes, and as such is entitled to indemnification from the third-party defendants in this suit, is unpersuasive. Substantial evidence supports the district court's conclusion that Maggy was an active participant in the failure to pay over the taxes, and we see no clear error in this finding. *See Bloom, supra.* Therefore, the indemnification claim was properly rejected. In accordance with the above, the judgment is affirmed in part and reversed in part.