**Dan O. DAVIS, Plaintiff-counter-claim-defendant-Appellant,**

v.

**UNITED STATES of America, Defendant-counter-claimant-Appellee.**

No. 90–16209.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1991.

Decided April 14, 1992.

---

David M. Kirsch, San Jose, Cal., for plaintiff-counter-claim-defendant-appellant.

Bruce R. Ellisen, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-counter-claimant-appellee.

Before: CHAMBERS, TANG and TROTT, Circuit Judges.

TANG, Circuit Judge:

Dan Davis, the president and major shareholder of ITAC Corporation, appeals a jury verdict finding him liable for willfully failing to pay withholding and social security taxes for ITAC's employees for the last quarter of 1981 and the first two quarters of 1982. Davis had argued that he was not a responsible officer and that his subsequent preference of other creditors over the Internal Revenue Service ("IRS") did not evince "willfulness." The district court refused to instruct the jury on Davis's definition of willfulness. The jury subsequently found Davis liable for the employee taxes owed the government. The district court also denied Davis's motion to reduce the assessment for the last quarter of 1981. Davis appeals. We affirm.

## BACKGROUND

### A. *Statutory Framework*

The Internal Revenue Code requires employers such as ITAC Corporation ("ITAC") to withhold federal social security and individual income taxes from the wages of their employees. 26 U.S.C. §§ 3102(a), 3402(a).[1] Although an employer collects this money each salary period, payment to the federal government takes place on a quarterly basis. In the interim, the employer holds the collected taxes in trust for the government. 26 U.S.C. § 7501(a). These taxes accordingly are known as "trust fund taxes." *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Other taxes, such as those directly owed by the business, are referred to as "non-trust fund taxes."

Once net wages are paid to an employee, the government credits that employee with the tax payments, regardless of whether the taxes are ultimately paid over by the employer. *Id.* In order to protect against revenue losses, the tax code offers the IRS a variety of means of recovering from employers who fail to pay over collected employee taxes. In addition to tax liens, 26 U.S.C. § 6321, and criminal penalties, 26 U.S.C. §§ 7202, 7215, the IRS may assess a civil penalty against responsible corporate officials equal to the amount of delinquent trust fund taxes ("100% penalty"), 26 U.S.C. § 6672. Section 6672 provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

A "person," for purposes of section 6672, includes "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). The recovery of a penalty under section 6672 entails showing

---

1. References are to the Internal Revenue Code of 1954, as amended, which was the operative code during the years at issue in this case.

that the individual both was a "responsible person" and acted willfully in failing to collect or pay over the withheld taxes. *Maggy v. United States*, 560 F.2d 1372, 1374 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978).

### B. *Factual History*

Dan Davis helped to organize ITAC in the mid–1970s. During the time in question, Davis was ITAC's president, a member of its board of directors, and its major shareholder.

ITAC failed to pay its employees' withheld social security and income taxes during the last quarter of 1981 and the first two quarters of 1982. Davis claims that he did not learn of this default until after July 31, 1982, at which time the payments for all three quarters were past due.

In October 1987, ITAC began paying the delinquent taxes on an installment basis. In the course of making these payments, ITAC never designated to which quarter or liability they should apply, leaving the allocation to the IRS's discretion.

Prior to calculating the 100% penalty against Davis, the IRS learned that no corporate assets were available to satisfy ITAC's non-trust fund tax liability. This prompted the IRS to reallocate funds originally used to reduce the trust fund tax debt to cover the non-trust fund taxes owed. The IRS contends that this reallocation was necessary to ensure full collection of both trust fund taxes (which can be recovered from either ITAC or a responsible officer) and non-trust fund taxes (generally chargeable only to ITAC).

Upon receiving his section 6672 penalty assessment, Davis paid $100 of the $69,791 penalty and filed a refund suit in federal district court.[2] The government counterclaimed for the remainder of the penalty plus interest and fees.

At trial, Davis contested both his status as a responsible person and the issue of willfulness. With respect to willfulness, Davis argued that he was unaware of ITAC's failure to make the tax payments until the money was overdue and the collected funds held in trust had been completely dissipated. Davis conceded that, after learning of the delict, he made payments to commercial creditors rather than to the IRS. These payments exceeded the amount of taxes due. Davis insists that these facts do not demonstrate willfulness because, under *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), he had no obligation to use corporate funds acquired after the quarterly payments became due ("after-acquired funds") exclusively to satisfy the IRS obligation.

The district court disagreed with Davis's interpretation of *Slodov*, concluding that the use of after-acquired funds to pay creditors other than the IRS demonstrated willfulness. Accordingly, the district court declined to offer Davis's proposed jury instructions on willfulness, advising the jury instead:

> The term "Willfully" means only that the act of failing to collect, account for, or pay over the taxes was done voluntarily, consciously, and intentionally. If Dan O. Davis voluntarily, consciously, and intentionally used the trust funds which were withheld, or caused or allowed them to be used for any other purpose other than payment of taxes, he is deemed to have acted willfully.... The only thing that need be shown is that [Davis] made a deliberate choice to pay other creditors instead of paying the Government.

On February 22, 1990, the jury returned a verdict finding that Davis was a "responsible person" throughout all three quarters in question and that Davis's failure to pay over the taxes each quarter was willful.

In March 1990, Davis filed a post-trial motion seeking a reduction of the penalty assessed for the fourth quarter of 1981. Davis argued that the effect of the IRS's

---

**2.** Full payment of the tax is not a jurisdictional prerequisite under the circumstances of this case because the tax due is divisible. *See Flora v. United States*, 362 U.S. 145, 171 n. 37, 175 n. 38, 80 S.Ct. 630, 646, n. 38, 4 L.Ed.2d 623 (1960); *see also* C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3656 (2d ed. 1985).

reallocation of payments originally credited to that quarter was to increase his 100% penalty from $2,888.98 to $18,848.19. Davis contended that, once payments are credited to a specific tax debt, the IRS cannot later reallocate those payments to a different debt. Davis also argued that the IRS impermissibly allocated ITAC payments to liabilities that had not yet been assessed and failed to notify ITAC of how its funds had been allocated. The district court denied the motion for reduction of penalty.

On July 16, 1991, the district court formally entered judgment for the IRS. Davis filed a timely notice of appeal to this court.

## DISCUSSION

### I. The "Willfulness" Instruction

On appeal, Davis does not challenge the jury's conclusion that he was a "responsible person" during the three quarters in which trust fund taxes were not paid over to the IRS. Davis argues only that, as a matter of law, he did not act willfully. Davis insists that, because he lacked knowledge of ITAC's failure to pay the taxes until after they were due, his subsequent use of corporate revenues to compensate other creditors rather than to pay the delinquent taxes does not evince willfulness. Davis contends that he deferred payments to the IRS in an attempt to resuscitate ITAC and thereby maximize the chances that the taxes would be repaid in full over time. To hold otherwise, Davis continues, would encourage management to walk away from the corporation or discontinue business upon learning of a back tax liability, rather than expose themselves to personal liability for the tax debt by continuing to pay the corporation's bills.

We review de novo the question whether the district court's jury instructions properly stated the law. *Collins v. City of San Diego*, 841 F.2d 337, 340 (9th Cir.1988).

We reject Davis's argument as inconsistent with the definition of willfulness promulgated by the Supreme Court and all other courts of appeals presented with the like claim. Davis's theory, moreover, would reward responsible corporate officers for their ignorance and force the federal government to subsidize management efforts to revive private corporations.

### A. Definition of Willfulness

Willfulness, within the meaning of section 6672, has been defined as a "'voluntary, conscious and intentional act to prefer other creditors over the United States.'" *Klotz v. United States*, 602 F.2d 920, 923 (9th Cir.1979) (quoting *Sorenson v. United States*, 521 F.2d 325, 328 (9th Cir.1975)); *see also Maggy*, 560 F.2d at 1375; *Teel v. United States*, 529 F.2d 903, 905 (9th Cir.1976). An intent to defraud the government or other bad motive need not be proven. *Klotz*, 602 F.2d at 923. In fact, conduct motivated by a reasonable cause may nonetheless be willful. *Barnett v. United States*, 594 F.2d 219, 221 (9th Cir.1979).

Davis's deliberate decision to use corporate revenues received after July 1982 (when Davis first became aware of the delinquency) to pay commercial creditors rather than to diminish ITAC's tax debt falls within the literal terms of this Circuit's definition of willfulness. The payments were a "voluntary, conscious and intentional act to prefer other creditors over the United States." *Klotz*, 602 F.2d at 923 (quotation omitted). Indeed, Davis admits that ITAC received sufficient income to satisfy in full its tax delinquency had those funds not been diverted to satisfy other corporate debts.

### B. The *Slodov* Decision

Davis argues that his actions fall within the exception to section 6672 liability carved out by the Supreme Court in *Slodov*. The Supreme Court held in *Slodov* that, if new management of a corporation assumes control when a delinquency for trust fund taxes already exists and the withheld taxes have already been dissipated by prior management, the new management's use of after-acquired revenues to satisfy creditors other than the United

States does not make it personally liable for a section 6672 penalty. 436 U.S. at 259–60, 98 S.Ct. at 1791–92.

Mr. Slodov purchased the stock and assumed management of three corporations on January 31, 1969. At that time, the corporations owed $250,000 in unpaid withholding taxes. All of the money withheld from the employees' salaries had been spent by prior management before Slodov assumed control. Indeed, when Mr. Slodov came to the helm, the corporations had absolutely no funds, trust or otherwise, with which to pay the tax debt. Under Mr. Slodov's guidance, the companies acquired sufficient revenue to pay the tax liability, but Mr. Slodov used the money to meet other obligations such as wages, rent, and supplies.

The Supreme Court concluded that Mr. Slodov's actions did not incur personal liability under section 6672.

> [Section] 7501 does not impress a trust on after-acquired funds, and ... the responsible person consequently does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time [the responsible person] assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute.

*Id.* at 259–60, 98 S.Ct. at 1791 (footnote omitted).

Informing the Supreme Court's decision were three considerations. First, the Supreme Court felt that imposing liability under the circumstances would frustrate the statute's purpose. Section 6672 promotes the full collection of taxes. Confronting potential rescuers of a failing institution with the Hobson's Choice of either assuming personal liability for the back taxes or finding the money to satisfy the tax debt in full before conducting any business actually increases the risk of non-collection. *Id.* at 252–53, 98 S.Ct. at 1787–88. Buyers capable of resuscitating the company would be scared off, consigning the business to collapse and the IRS to bankruptcy court to collect its money. Relieving new management from personal liability, on the other hand, would provide the financial breathing room necessary for new officers to get a business back on its feet. Once recovered, the company not only could pay its tax debt, but also could contribute additional tax revenue in the future.

Second, the Supreme Court found the tax code's language and legislative history inconsistent with a penalty theory that imposed "liability without personal fault." *Id.* at 254, 98 S.Ct. at 1789. After-acquired funds, the Court continued, were not automatically impressed with a trust for the benefit of the government. *Id.* Rather, some "nexus between the funds collected and the trust created" must be established. *Id.* at 256, 98 S.Ct. at 1789–80. For new management, no such nexus exists.

Finally, the Court held that a rule automatically requisitioning all after-acquired cash for the federal Treasury would conflict with the priority rules creating a preferred status for some creditors over federal tax liabilities. *See* 26 U.S.C. § 6323. Responsible persons who paid these preferred creditors before paying back taxes might be deemed liable under section 6672 for diverting funds from the company's trust fund tax repayment obligation. "Surely," the Supreme Court explained, "Congress did not intend § 6672 to hammer the responsible person with the threat of heavy civil and criminal penalties to pay over proceeds in which the [Internal Revenue] Code does not assert a priority interest." 436 U.S. at 259, 98 S.Ct. at 1791.

Davis would have this court extend *Slodov* to hold that the use of after-acquired funds to pay commercial debts by the same persons who were responsible for the failure to collect and pay the withholding taxes in the first instance (as opposed to new management) does not give rise to liability under section 6672. We decline Davis's invitation for three reasons.

### 1. Slodov's *language*

First, the *Slodov* opinion specifically excludes from its ambit Davis's situation, lim-

iting its holding to cases involving the accession of new management:

> When the same individual or individuals who caused the delinquency in any tax quarter are also the "responsible persons" at the time the Government's efforts to collect from the [corporate] employer have failed, and it seeks recourse against the "responsible employees," there is no question that § 6672 is applicable to them. It is the situation that arises when there has been a change of control of the employer enterprise, here corporations, prior to the expiration of a tax quarter, or at a time when a tax delinquency for past quarters already exists that creates the question for our decision.

*Id.* at 245–46, 98 S.Ct. at 1784 (emphasis added; footnote and citation omitted).

■ While Davis says that he was unaware of ITAC's dereliction until the trust fund taxes were overdue, the district court properly instructed the jury that responsibility is a matter of status, duty, and authority, not knowledge. *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987) (per curiam); *Wood v. United States*, 808 F.2d 411, 415 (5th Cir.1987); *see also United States v. Vespe*, 868 F.2d 1328, 1334 (3d Cir.1989). The jury found that Davis was a responsible person and, as such, his actions or inactions caused ITAC not to pay over the withheld taxes as required by law. Because Davis was responsible both at the time the taxes went unpaid and at the time the government sought to collect under section 6672, "there is no question that § 6672 is applicable to [him]." *Slodov*, 436 U.S. at 246, 98 S.Ct. at 1784.

Davis counters that simply being responsible is not enough. He points out that Mr. Slodov was a corporate officer as of January 31, 1969—the day that payments for the last quarter of 1968 were due. Status as a responsible person, however, does not attach automatically to every officer engaged in fiscal management on the day the tax check must be written. Rather, liability as a responsible person attaches each time salaries are paid during the course of a quarter. "As the employer withholds taxes from the employees, a contingent liability is created. The liability merely becomes fixed on the date when the payments are due." *Teel*, 529 F.2d at 906; *see Maggy*, 560 F.2d at 1375 (holding that Maggy was a responsible person for that portion of the quarter during which he actually exercised control over corporate disbursements; that Maggy was not technically still a responsible officer on the day payment was due did not expunge his liability for the earlier portion of the quarter); *United States v. De Beradinis*, 395 F.Supp. 944, 951 (D.Conn.1975) ("The obligation of a responsible officer arises at the time the taxes are withheld from wages, *not* at some subsequent time when payment is due or the return is to be filed."), *aff'd mem.*, 538 F.2d 315 (2d Cir.1976). Mr. Slodov, unlike Davis, had no role in the corporation at the time the taxes were withheld and salaries disbursed. Nor did the corporation have any funds available with which to pay the tax when Slodov arrived on January 31st.

Davis, by contrast, did not simply appear on the eve of tax payment day. To the contrary, his status and role in the corporation made him a responsible person from the day the first salary was paid in the last quarter of 1981. Moreover, Davis has made no showing that corporate funds did not exist with which to satisfy the tax liability on the payment due date. He contends only that the funds actually withheld had been disbursed by this time. This is insufficient to invoke the protection of *Slodov*.

### 2. *Slodov's rationale*

Second, the three considerations on which the *Slodov* opinion was predicated do not obtain in this case. Davis claims that, once he learned that ITAC was not paying employees' withholding taxes, he assumed a more active role in supervising corporate disbursements. He contends that the factors animating the *Slodov* decision with respect to new management apply with equal force to the shuffle of duties that took place at ITAC. In other words, Davis would have this court equate transfers of responsibility internal to the corporation

with the accession of new management that occurred in *Slodov*. The Supreme Court's analysis, however, will not support such a conclusion.

In *Slodov*, the Supreme Court expressly counselled against interpreting section 6672 in such a manner that "the penalties easily could be evaded by changes in officials' responsibilities prior to the expiration of any quarter." 436 U.S. at 247, 98 S.Ct. at 1785. Davis's theory would encourage corporate roulette. Responsible officers, upon learning that taxes had gone unpaid during their watch, could simply rotate their respective responsibilities and duties. Once the officers assumed their new duties, they would be relieved from section 6672 personal liability for the use of forthcoming revenues to pay debts other than the back taxes. The corporation could thus delay compensating the federal treasury for the use of its money indefinitely, thereby freeing up corporate income for more self-interested expenses.

*Slodov*'s concern for encouraging new management to salvage failing businesses, thus maximizing the chances for tax recovery, also loses much of its luster in this context. Persons "contemplating assuming control of a financially beleaguered corporation owing back employment taxes," *Id.* at 252–53, 98 S.Ct. at 1787–88, might be deterred by the risk of personal liability. While Davis suggests that he and other responsible officers, just like potential purchasers, have the option of just walking away when they learn of an accrued withholding tax liability, in reality the choice for existing management is not that simple. Existing management has a vested interest, financial and otherwise, in guiding a business through troubled waters. Legal obligations and duties limit an officer's ability to walk away upon learning of an overdue tax liability. Indeed, for "responsible persons," leaving is no guarantee that liability will still not attach. A jury or judge could disbelieve protestations of ignorance or find that the officer acted recklessly or was willfully ignorant of the fail-

ure to pay taxes. *See Teel*, 529 F.2d at 905. Existing management like Davis, in other words, has sufficient incentive to remain and to keep the company afloat and capable of repaying taxes without specifically excepting them from section 6672 liability.

*Slodov*'s insistence on personal fault is also satisfied in this case. Unlike Mr. Slodov, Davis presided over the corporation every day during which taxes were taken from employees' checks and dissipated to satisfy corporate needs, at the expense of the public fisc. The jury found that, throughout these three quarters, Davis had the authority and responsibility to prevent this breach of trust, but failed to do so.[3] While the briefs do not trace the expenditure of the trust funds, Davis at least indirectly benefited from the illicit diversion of the federal government's money. Bills and salaries (including Davis's) were paid and the company kept afloat for three quarters. That might not have been possible without the use of the tax revenues. A much stronger foundation for personal fault thus exists for Davis than for new management like Mr. Slodov.

Concerns about priority rules also have no practical application in this case. Davis has made no showing that any of the creditors he preferred to the IRS held debts given a priority by the tax code. *See* 26 U.S.C. § 6323. We thus leave for another day the question whether section 6672 liability attaches when existing management uses after-acquired funds to pay only debts having priority over a tax lien. With respect to otherwise unencumbered corporate income, the obligation to repay the taxes remains intact.

Finally, it should be noted that *Slodov* was concerned with the situation where, when new management assumes control, the business has no funds at all available to alleviate its tax debt. While Davis points out that the trust funds were dissipated prior to the time he learned of the delict, he

---

**3.** For all the verdict shows, the jury might also have disbelieved Davis's claimed lack of knowledge and found that he was aware of and ac-

quiesced in the failure to pay over withholding taxes throughout the three quarters.

makes no showing that "there were no funds with which to satisfy the tax obligation." 436 U.S. at 259–60, 98 S.Ct. at 1791–92. It is unclear from the Supreme Court's opinion how critical a factor the impoverishment of the business is, other than that the total unavailability of cash and liquid assets makes the revival of the business through commercial expenditures much more urgent and the threat that the IRS will be unable to collect due to a bankruptcy much more immediate. To the extent ITAC was in a more solvent financial condition, it had less of an excuse to prefer commercial creditors over the IRS.

### 3. *Circuit court decisions*

The third reason we refuse to extend *Slodov* to Davis's situation is that Davis's proposed interpretation of *Slodov* has been implicitly foreclosed by two of our previous decisions and expressly rejected by four other federal courts of appeals. In two decisions pre-dating *Slodov*, we held that the use of after-acquired funds to compensate debtors other than the United States amounts to willfulness. In *Teel*, the responsible corporate officers first learned of the business's failure to pay on October 17, 1966. After October 17th, the same officers knowingly used incoming cash to purchase new merchandise. The Ninth Circuit observed:

> The [purchase] agreement seems sensible and honest. But the trouble is that as the cash went into the cash drawer, it became subject to trust or lien in favor of the federal government for the unpaid withholding taxes. By dissipating the cash for new purchases, of which the taxpayers knew, they unwittingly supplied the necessary willfulness. Because the failure to pay the arrearages and current tax after October 17, 1966, was willful, any factual issue as to ignorance of nonpayment prior to October 17, 1966, is not material.

529 F.2d at 905–06.

Likewise in *Maggy*, we held that a responsible officer's failure to use funds received by the business to repay its tax liability constituted willfulness because "the funds which came into the corporation became immediately subject to a trust or lien in favor of the United States for the unpaid withholding taxes." 560 F.2d at 1375–76.

Davis attempts to distinguish these cases on two grounds. He argues firstly that *Teel's* and *Maggy's* reliance on a trust fund theory is outmoded in light of *Slodov's* admonition that "[n]othing whatever in § 6672 ... suggests that the effect of the requirement to 'pay over' was to impress a trust on the corporation's after-acquired cash." 436 U.S. at 254, 98 S.Ct. at 1789.

While *Slodov* might quarrel with some of *Teel's* and *Maggy's* phraseology, we nevertheless consider our previous opinions' analyses sound and their bottom-line conclusions consistent with *Slodov*. Applying the appellation "trust" to *Teel's* and *Maggy's* after-acquired funds was simply a shorthand acknowledgment of the obligations section 6672 imposes on persons who (unlike *Slodov*) are responsible when the taxes are collected, when the funds are dissipated, and when subsequent corporate income is diverted to creditors other than the United States. *Slodov* recognizes this distinction when, at the outset of its opinion, the Supreme Court contrasts Slodov's circumstances with the situation where the same corporate officers who prefer other creditors to the federal treasury were responsible before, during, and after dissipation of the withheld taxes. 436 U.S. at 245–46, 98 S.Ct. at 1784–85. In the latter case, the Supreme Court said "there is no question that § 6672 is applicable to them." *Id.* at 246, 98 S.Ct. at 1784; *see also Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.) (*Slodov* "implicitly affirms [*Teel's* and *Maggy's*] conclusions because the [Supreme] Court assumes at the outset that a penalty may be exacted from a person who was responsible both during the period withholding tax liability accrued and thereafter"), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

Moreover, the Supreme Court's concern with imposing a trust on all after-acquired funds under all circumstances was that such a theory gave insufficient heed to the

necessary nexus between the payment obligation and the after-acquired funds. *See Slodov*, 436 U.S. at 256, 98 S.Ct. at 1789–90. In Davis's case, his continuing responsibility before, during, and after the tax delinquency creates the requisite linkage between subsequently received cash and a duty to satisfy the trust fund tax delinquency.

■ Davis also tries to sidestep *Teel* and *Maggy* by pointing out that the responsible officers there learned of the tax delinquency before the actual payment due date and thus were under an absolute obligation to use any and all corporate funds to pay the taxes on time. Davis insists that he remained in the dark until after the money was due. Assuming the jury believed Davis's claim of ignorance, Davis still fails to explain why this timing factor should be critical. What is key in *Teel* and *Maggy* is that (1) the officers were in responsible positions at the time the taxes were or should have been collected and at the time trust moneys were dissipated, and (2) they ignored their obligations as responsible officers, knowingly and willfully diverting after-acquired cash to commercial creditors instead of paying the United States. Like *Teel* and *Maggy*, Davis's status and authority throughout the quarters, not his state of mind, made him a responsible person. As in *Maggy* and *Teel*, Davis's actions after he learned of the tax debt are what constituted willfulness. The arrival of a payment date, after all, does not by itself impose liability. It simply marks the fruition of liability—that is, responsibility—accumulated throughout the quarter as salaries were paid and/or trust funds dissipated. *See Maggy*, 560 F.2d at 1375; *Teel*, 529 F.2d at 906; *De Beradinis*, 395 F.Supp. at 951. Similarly, a person may still be deemed responsible for a quarter's tax payment even if she no longer holds a responsible position when the payment date arrives. *See Slodov*, 436 U.S. at 247, 98 S.Ct. at 1785; *Brown v. United States*, 591 F.2d 1136, 1140 (5th Cir.1979).

Numerous federal courts of appeals have followed *Teel's* and *Maggy's* holdings in the post-*Slodov* era, specifically rejecting in the process the argument Davis now proffers. In *Mazo*, the Fifth Circuit refused to extend *Slodov* to cases "[w]here there has been no change in [corporate] control." 591 F.2d at 1154. The Fifth Circuit emphasized that the Supreme Court specifically limited *Slodov* to the expenditure of funds acquired after new management's " 'accession to control.' " *Id.* (quoting *Slodov*, 436 U.S. at 259, 98 S.Ct. at 1791). Concluding that neither *Slodov's* language nor its rationale applied to continuing management, the Fifth Circuit held:

> In the case of individuals who are responsible persons both before and after withholding tax liability accrues, as the appellants were in this case, there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability, as was the case here, constitutes willfulness.

591 F.2d at 1157; *see also Wood*, 808 F.2d at 415–16 ("Because ... Wood was a responsible person both before and after the obligations at issue accrued, *Slodov* is not applicable," even though Wood assumed new job responsibilities upon learning of the tax deficiency).

All of the other circuits presented with Davis's argument unanimously have limited *Slodov* to changes in management control. Quick on *Mazo's* heels came the Eighth Circuit's opinion in *Kizzier v. United States*, 598 F.2d 1128 (8th Cir.1979), holding:

> Although Kizzier did not become aware of Titan's 1973 tax delinquency until March 1974, he was a responsible person within the meaning of section 6672 through all the calendar quarters. Titan failed to pay over employment taxes to the Government. As such, Kizzier's responsibility to pay Titan's withheld employment taxes extended to unencumbered funds received by the corporation after Kizzier learned of Titan's tax delinquency.

*Id.* at 1134.

The Seventh Circuit followed suit:

*Slodov* does not relieve a "responsible person" of the responsibility to reduce accrued withholding tax liability with funds acquired after the funds actually withheld have been dissipated so long as the person responsible has been so throughout the period the withholding tax liability accrued and thereafter.

*Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979); *see also Purdy Co. v. United States,* 814 F.2d 1183, 1188 (7th Cir. 1987).

The Third Circuit rounded out the circle in *Vespe:*

One who was a responsible person when taxes were incurred, and who only later becomes aware that they were not paid, acts willfully by then paying other creditors in preference to the United States, even if the money specifically withheld has been dissipated.

868 F.2d at 1335; *see also id.* at 1334 n. 7; *cf. Thibodeau,* 828 F.2d at 1506 (preferring other creditors over the United States prior to payment due date demonstrates willfulness); *Caterino v. United States,* 794 F.2d 1, 6 (1st Cir.1986) ("Any responsible person who knows the taxes are not paid and allows the business to pay other creditors acts willfully."), *cert. denied,* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987).

## C. *The* Johnson *Decision*

As an answer to the weight of authority rejecting his position, Davis offers *Johnson v. Commissioner,* 663 F.Supp. 294 (D.Utah 1987), a case that apparently no other court has followed. In *Johnson,* the district court tracked the argument Davis makes here and extended *Slodov* to corporate officers who, although responsible, did not actually know of the tax diversion until after the fact.

[P]enalties cannot be imposed upon [responsible officers] based upon their payment of corporate creditors with cash acquired after they learned of failures to pay tax withholdings, so long as the responsible person did not play a "willful" role in that failure.

*Id.* at 299 (footnote omitted).

We find *Johnson* unpersuasive. As noted earlier, contrary to the *Johnson* court's holding, neither *Slodov's* language nor its rationale compels excusing continuing management from liability under section 6672.

The *Johnson* approach, moreover, focuses too heavily on corporate officers' actual knowledge, effectively creating two tiers of responsible persons. The first tier consists of corporate officials like Johnson and Davis who meet all of the traditional criteria for responsible status, but who do not knowingly play a role in the failure to collect, or the dissipation of, withholding taxes. The second tier would be those with responsibility *plus* actual participation in the loss of the trust funds—that is, "a person who was responsible throughout the period [and] *also* acted 'willfully' during that period of time." *Johnson,* 663 F.Supp. at 298. This scheme is inconsistent with our prior articulations of the responsibility test. *See Teel,* 529 F.2d at 905.

Furthermore, *Johnson* ignores the purpose of section 6672, which is to make the federal treasury whole and to encourage diligent compliance with the withholding rules by all those in a position to regulate a corporation's collection and disbursement of money. *See United States v. Graham,* 309 F.2d 210, 212 (9th Cir.1962) ("The statute's purpose is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing."). The *Johnson* approach undercuts this goal by rewarding officers for their ignorance. Davis would be a responsible officer in name only. Although found to have been in a position to prevent ITAC's tax delinquency, Davis would face no sanctions. To the contrary, *Johnson* would permit Davis to continue (as did the officers who actually dissipated the trust funds) to subordinate the public fisc to the corporation's private interests. Despite his responsibility for damage to the federal treasury, *Johnson* would allow Davis to continue to divert funds from the government to other commercial expenses he deems more worthy of the corporate dollar.

In the meantime, the federal government's interest in corporate revenues is

held hostage to the continued success of the business. The federal government is in effect subsidizing the corporation's recovery by foregoing collectible tax dollars. Numerous courts have admonished against such interpretations of section 6672. *See, e.g., Thibodeau,* 828 F.2d at 1506 ("[T]he government cannot be made an unwilling partner in a business experiencing financial difficulties."); *Mazo,* 591 F.2d at 1154 ("[T]he United States may not be made an unwilling joint venturer in the corporate enterprise.").

In sum, we eschew adopting the *Johnson* theory of responsibility without consequences. Instead, we join the Third, Fifth, Seventh, and Eighth Circuits in refusing to extend *Slodov* to cases where the responsible officer presided over both the initial loss of the trust funds and the subsequent diversion of after-acquired revenues and hold that the district court properly instructed the jury on willfulness. To hold otherwise would ignore *Slodov's* plain language and analytical foundations, as well as frustrate the remedial and deterrent purposes of section 6672.

## II. Reallocation of Tax Payments

Davis argues alternatively that, if he is liable for some penalty, his assessment for the last quarter of 1981 was improperly inflated by the IRS's reallocation of payments from the 1981 trust fund tax debt to non-trust fund tax liabilities.

■ At the outset, we are confronted with the question of what standard of review to apply to the district court's refusal to reduce the 1981 assessment. The government characterizes this as a question of law to be reviewed de novo, although the cases it cites neither establish a standard of review nor involve the issue on appeal here. *See Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932); *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983).

At least one district court has treated a request for an order directing the IRS to reverse a reallocation of taxes as a motion for a writ of mandamus directing the IRS to undo the reallocation. *Skwarlo v. Unit-* ed States, No. 82–C–500, slip op. (N.D.Ill. June 25, 1982).

We agree with the *Skwarlo* court and hold that Davis's argument should be treated as an appeal from the denial of mandamus, which is reviewable for an abuse of discretion. *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986). Such a standard of review recognizes the IRS's general authority to allocate as it sees fit undesignated payments. *See Muntwyler,* 703 F.2d at 1032. The district court, after all, does not make the allocations or reallocations. The amount of the penalty is mandated by statute to be commensurate with the taxes owed. Thus, only when the tax debt itself changes can the 100% penalty amount be reduced. What Davis effectively seeks is an order of mandamus requiring the IRS to return to its original allocation of ITAC's payments.

■ The parties do not dispute that this was a voluntary payment—that is, a payment not made pursuant to judicial or administrative order. *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.),* 833 F.2d 797, 802 (9th Cir.1987). When a taxpayer submits a voluntary payment, she may designate to which liability the money should be applied. *Id.* at 799; *Muntwyler,* 703 F.2d at 1032. If the taxpayer fails to target the funds to a specific liability, the IRS may apply the payment as it sees fit. *Wood,* 808 F.2d at 416; *Muntwyler,* 703 F.2d at 1032.

IRS policy is to credit undesignated payments first to non-trust fund liabilities and only secondly to trust fund liabilities. This practice "has been previously blessed by a multitude of courts." *United States v. Schroeder,* 900 F.2d 1144, 1149 (7th Cir. 1990); *accord Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971) (IRS may apply undesignated payments to debt with greatest risk of non-collection), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

■ Few courts have addressed the IRS's authority to reallocate payments, as it did here, in light of new information or

changed circumstances affecting debt collectibility. We have previously condoned a reallocation that reduced a taxpayer's section 6672 liability. *Mattingly v. United States*, 939 F.2d 816, 819–20 (9th Cir.1991). A bankruptcy court has specifically approved the reallocation of involuntary bankruptcy payments to non-trust fund taxes. *Neier v. United States*, 127 B.R. 669, 674 (D.Kan.1991). Involuntary payments, like undesignated payments, may be credited as the IRS desires. *Muntwyler*, 703 F.2d at 1032. One other district court, in dicta, summarily dismissed a challenge to an IRS reallocation:

> It may be, as plaintiffs assert, that the proceeds of the checks were applied first to Dav-el's trust fund obligation and later reallocated to Dav-el's non-trust fund obligation. It is material that the money is now allocated to the non-trust fund obligation.... It is immaterial whether a prior allocation was made to the trust fund obligation.

*Ellis v. United States*, 87–2 U.S. Tax Cas. (CCH) 9418, at 89,159 n. 1 (W.D.Wis.1987).

 We find no basis for reversing the district court's decision not to order a reallocation of Davis's taxes. To the contrary, we find three significant problems with Davis's position.

 First, Davis's attempted employment of state debtor/creditor law to define how undesignated payments should be treated raises the specter of a plethora of different rules and requirements governing IRS treatment of undesignated payments. The Supreme Court has expressly warned against creating a checkerboard of federal tax law. *Burnet*, 287 U.S. at 110, 53 S.Ct. at 77. State law will be incorporated as a part of the federal taxing scheme "only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state

law." *Id.* Davis has made no such showing in this case.

 Second, straitjacketing the IRS into its initial allocation decisions would be inconsistent with the goal of maximizing tax revenues.

The defendant claims that the United States has failed to apply funds received by it in such a way as to relieve him of the responsible officer assessment against him. This charge is not denied, in fact for the Commissioner of Internal Revenue to have done otherwise would have been to shirk his responsibility to insure that the maximum amount of assessed tax be collected.

*De Beradinis*, 395 F.Supp. at 952. Adjustments of allocations should be permitted as new information comes to the IRS.[4]

Third, Davis has made no showing that he was injured by the reallocation or that he detrimentally relied on the original allocation. Davis concedes that, had the IRS originally allocated the payments along their current lines, his penalty would have been identical to what it now is. The reallocation thus has not increased his penalty beyond that for which he was eligible in the first instance.

Davis, moreover, would be hard-pressed to demonstrate detrimental reliance. He made no effort to designate ITAC's payments, thereby waiving any interest in how the IRS allocated the money. As an experienced business person, he should have been aware of the IRS policy to target undesignated payments to non-trust fund taxes first.

Given the lack of actual injury, the dangers of incorporating state law, and the need to preserve IRS flexibility, we refuse to tie the IRS's hands in the manner advocated by Davis. We therefore affirm the district court's denial of Davis's motion for reduction of penalty.[5] While perhaps a dif-

---

**4.** We need not decide whether limits on the IRS's reallocation authority would be appropriate where the taxpayer's voluntary payment completely satisfies an existing tax liability, as opposed to simply reducing it. *Cf. Brookhurst, Inc. v. United States*, 931 F.2d 554, 556 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 299, 112

S.Ct. 299, 116 L.Ed.2d 242 (1991); *Kelley v. United States*, 30 F.2d 193, 193–94 (9th Cir. 1929).

**5.** Davis also objects that some payments were impermissibly credited to non-mature debts. As the government points out, however, sufficient

ferent rule will apply in cases where the taxpayer can show actual harm from the reallocation or a failure of the IRS to follow a designation on a voluntary payment, this is not such a case.[6]

### CONCLUSION

We affirm the district court's instructions on willfulness as consistent with *Slodov*. To hold otherwise (i) would be contrary to *Slodov's* language and rationale, (ii) would undermine this circuit's opinions in *Teel* and *Maggy*, (iii) would place this circuit in conflict with at least four other federal courts of appeals, and (iv) would frustrate section 6672's purpose. With respect to the IRS's reallocation of ITAC payments, we affirm the denial of reduction due to Davis's failure to demonstrate injury, detrimental reliance, or diligence in designating the payments in the first instance.

AFFIRMED.

---

mature non-trust fund debts existed to support reallocation and to result in the same 100% penalty. An order for reallocation would thus result in only a paper shuffle, with no real benefit accruing to Davis.

**6.** Davis's motion to strike the government's brief as untimely filed is denied. The government is admonished, however, to adhere strictly to filing deadlines set by this court in the future. Davis's request for attorney's fees is also denied.