In re Raymond **WILLIAMS**, and Pauline Williams, Debtors.

Raymond **WILLIAMS**, Plaintiff,

v.

**INTERNAL REVENUE SERVICE**, Defendant.

Bankruptcy No. 94–30925–7.
Adv. No. 94/00099.

United States Bankruptcy Court,
D. Montana.

April 4, 1995.

Ralph B. Kirscher, Worden, Thane & Haines, P.C., Missoula, MT, for debtors.

Sherry S. Matteucci, U.S. Atty., and Jeff Snow, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for the U.S., IRS.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, a Chapter 7 co-Debtor, Raymond Williams, Plaintiff, filed an adversary complaint against the Defendant Internal Revenue Service (IRS) seeking a determination that unpaid trust fund withholding taxes assessed against the Plaintiff/Debtor are not due and owing to the IRS by the Plaintiff under 26 U.S.C. § 6672. After answer, trial of the matter was held on March 6, 1995, with the Plaintiff testifying as the only witness and the parties' exhibits admitted into evidence. Post trial memoranda have been filed by each party and the matter is ready for decision. It is admitted by the parties that this Court has jurisdiction over the subject matter of this case as a core proceeding under 11 U.S.C. § 505, 28 U.S.C. §§ 157(b)(2)(B) and 1334.

### FINDINGS OF FACT

The Court makes the following findings of fact.

1. Maxwell Automotive Services, Inc., of Portland, Oregon, was incorporated about November 1, 1988. The Plaintiff was employed as manager of the corporation, which had six employees over whom the Plaintiff had the authority and duty to hire and fire, and direct customer services.

2. At the time of incorporation, Richard W. Scheu (Scheu) was sole stockholder, officer and director. In late 1988, Scheu experienced trouble with two Portland banks due to writing insufficient checks. As a result, in January, 1990, the corporation opened a new bank account with the Plaintiff, rather than Scheu, as the signatory. At the same time, the Plaintiff invested $12,000.00 of Plaintiff's funds derived from a pension fund of a former employer and received a one-third stockholder's interest in the corporation.

3. The financial affairs of the corporation were directed and controlled by Scheu. The routine was for the Plaintiff or Plaintiff's wife to prepare a list of unpaid bills, present the list to Scheu, who would then decide which account to pay. Plaintiff would then write the checks for payment.

4. The corporation failed to pay employee withholding taxes in the first quarter of its business operation ending 12/31/88 in the sum of $3,945.63. The Plaintiff was not a signatory on the checking accounts of the corporation during this period. The delinquency continued without interruption for each quarter ending 3/31/89, 6/30/89, 9/30/89 and 12/31/89, resulting in unpaid trust fund taxes of $9,202.71, 11,808.09, $9,342.43, and $6,989.68 for each respective period according to the "Request For 100 Percent Penalty Assessment" made against the Plaintiff by the IRS on 7/1/92 (Exhibit A) in the total sum of $25,554.19, which includes penalties and interest. The Form 941 Employer's Quarterly Federal Tax Returns filed by Maxwell Automotive Services, Inc., show the following delinquencies:

Dec. 31, 1988 — $ 8,373.88 (Exhibit 3)
Mar. 31, 1989 — $ 7,075.59 (Exhibit 4)
June 30, 1889 — $10,075.75 (Exhibit 5)
Sept. 30, 1989 — $ 7,983.67 (Exhibit 6)
Dec. 31, 1989 — $ 6,026.34 (Exhibit 7)

All returns were signed by Richard Scheu, as President, except for the return for the period ending December 31, 1989, which is dated 2/20/90, and signed by Ray Williams as manager. Williams testified that this return (Exhibit 7) was prepared and signed by Williams at the request of IRS agent Konsella, who conducted an interview of Williams on 2/14/90 (Exhibit 1). On April 1, 1992, the IRS filed a Notice of Federal Tax Lien against Williams in Lake County, Montana, in the sum of $23,606.62, and refiled a Notice of Tax Lien on 8/24/93 in the sum of $24,161.09.

The IRS acknowledges payments from the taxpayer corporation 1/10/89 ($4,050.73), 12/11/89 ($1,229.53), 12/12/89 ($89.95), 12/27/89 ($562.11), and 1/22/90 ($432.21), but there is no evidence in the record as to the source of each payment. The business of the corporation terminated in December, 1989, with the Plaintiff having earned about $30,-000 for the year, although receiving no payment in the last part of December, 1989.

5. The Plaintiff first became aware of the delinquent withholding taxes in the Spring of 1989, and put the taxes on the list for payment, but Scheu directed the Plaintiff not to pay the taxes or Plaintiff would be fired. Again in July, 1989, Plaintiff prepared checks for payment of the withholding taxes and presented them to Scheu to send in with the quarterly report, but Scheu took the checks and tore them up. By this time, the Plaintiff stopped writing checks on the account, and it was kept open to receive deposits from credit card purchases.

After July 1989, Scheu opened a new account in Scheu's son's name for payment of payroll and other business expenses. This move effectively closed the Williams bank account for payment of expenses of the business. All payroll accounts and books were kept solely by Scheu, through a company called "Paychecks," with whom the Plaintiff had no contact. In late 1989, an IRS agent visited the business about the delinquency, and talked only with Scheu, not the Plaintiff. The corporate account on which the Plaintiff was signatory was closed in November, 1989.

6. All of the financial records of the business, and decisions on financial matters were controlled at all times by Scheu. Plaintiff had no authority to borrow funds on behalf of the corporation, was never a member of the corporation board of directors, nor ever attended a shareholder's or director's meeting. On the other hand, the Plaintiff was listed on the corporation bank account as President and Plaintiff's wife as Treasurer because of Scheu's financial troubles with the banks. The Plaintiff kept the check book in Plaintiff's possession, and on some occasions signed blank checks for Scheu to fill in. All other checks were made out on the account at the direction of Scheu.

## CONCLUSIONS OF LAW

The assessment made against the Plaintiff for unpaid withholding taxes of Maxwell Automotive Services, Inc., is pursuant to 26 U.S.C. § 6672, which provides in relevant part:

[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

*Purcell v. U.S.*, 1 F.3d 932, 936 (9th Cir.1993) states:

Thus, "[t]he recovery of a penalty under section 6672 entails showing that the individual both was a 'responsible person' and acted willfully in failing to collect or pay over the withheld taxes." *Davis v. United States*, 961 F.2d 867, 869–870 (9th Cir. 1992) (citation omitted), *cert. denied* — U.S. —, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993).

*United States v. Jones & Schiff*, 33 F.3d 1137, 1139 (9th Cir.1994) states that "[i]ntroducing Certificates of Assessments and Payments establishes a prima facie case for the United States," so "[T]he individual against whom the assessment is made bears the burden of proving by a preponderance of the evidence that one or both of [the elements of responsibility and willfulness] is not present."

*Jones & Schiff, supra*, at 1139–1140 explains the responsibility prong:

Under § 6672, persons responsible have the "final word as to what bills should or should not be paid and when." *Purcell v. United States*, 1 F.3d 932, 936 (9th Cir. 1993) (quotations omitted) (sole authorized signatory who was president and sole shareholder liable under § 6672 despite delegation of financial matters to chief financial officer). The final word does not mean "final" but instead "the authority required to exercise significant control over the corporation's financial affairs, regardless of whether [the individual] exercised such control in fact." *Id.* at 937 (emphasis added); *see also Turner v. United States*, 423 F.2d 448, 449 (9th Cir. 1970) (finding that "[i]n this context 'final' means significant, rather than exclusive control").

"[R]esponsibility is a matter of status, duty, and authority, not knowledge." *Davis v. United States*, 961 F.2d 867, 873 (9th Cir.1992) (president and major shareholder liable under § 6672 because he paid other creditors rather than the delinquent taxes), cert. denied, — U.S. —, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). "Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." *Purcell*, 1 F.3d at 937.

Although an individual's daily functions may be unrelated to financial or tax-related decision-making, that individual may be "responsible" by having the "authority to pay or to order the payment of delinquent taxes." *Id.* An individual who does not have the authority and control to pay the payroll taxes may not be "responsible." *See Alsheskie [v. United States ]*, 31 F.3d [837] at 839–40 [ (9th Cir.1994) ] (defendant not "responsible" when he submitted an affidavit indicating that the parent corporation "essentially precluded [him] from exercising the degree of autonomy, authority and control necessary to be able to pay the payroll tax liabilities ... on a timely basis"). Courts must look beyond official titles to the actual decision-making process. *Godfrey v. United States*, 748 F.2d 1568, 1575 (Fed.Cir.1984) (chairman of the board of directors not liable under § 6672 because there was no evidence that he had or exercised control over collection, accounting for, or payment of taxes). The Second Circuit outlined factors relevant to whether an individual is "responsible" under § 6672 in *Hochstein [v. United States ]*, 900 F.2d [543] at 547 [ (2nd Cir. 1990) ], stating that "the individual's duties as outlined in the corporate bylaws, his ability to sign checks, his status as an officer or director, and whether he could hire and fire employees" were important factors to consider. In *Hochstein*, the Second Circuit found the defendant "responsible" because as controller of the company, he had check signing authority and the discretion over which creditors to pay. *See also Gephart v. United States*, 818 F.2d 469, 473 (6th Cir.1987) (general man-

ager "responsible" because he had authority to initially determine which creditors to pay). The most critical factor was having "significant control over the enterprise's finances." *Hochstein,* 900 F.2d at 547.

■ *Purcell v. United States, supra,* 1 F.3d at 937–938, explains the willfulness prong:

In *Davis,* we noted that a long line of decisions in this circuit has defined willfulness "as a voluntary, conscious and intentional act to prefer other creditors over the United States." 961 F.2d at 871 (citations and internal punctuation omitted). We then observed that "Davis's [sic] deliberate decision to use corporate revenues received after July 1982 (when Davis first became aware of the delinquency) to pay commercial creditors rather than to diminish [the corporation's] tax debt falls within the literal terms of its Circuit's definition of willfulness." *Id.*

The government need not prove intent to defraud or other bad motive. *Davis,* 961 F.2d at 871. "In fact, conduct motivated by a reasonable cause may nonetheless be willful." *Id. Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975) holds that "the payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a willful failure to collect and pay over under § 6672." And *Purcell, supra* at 938, where the taxpayer directed payment to other creditors rather than remit to the government, states that "[E]very such payment 'was a voluntary, conscious and intentional act to prefer other creditors over the United States,'" thus satisfying the willfulness test.

The government contends in its post-trial brief the check writing authority of the Plaintiff, listing Plaintiff as corporate president on the bank account, thereby granting Plaintiff the ability to write checks, and Plaintiff's authority to hire and fire employees, constitute sufficient grounds to find the Plaintiff was a responsible person under § 6672. The government further contends the Plaintiff acted willfully by failing to draw a check for the payment of the taxes when other creditors were preferred. The Plaintiff counters that the majority owner of the company,

Scheu, directed all financial operations of the company, that Plaintiff was signatory on the one account opened in January, 1989, to accommodate Scheu, and all decisions on payment of creditors were made solely by Scheu.

Applying the above findings of fact to the established law of the Ninth Circuit as expressed above, I hold the Plaintiff was not a responsible person under § 6672. The Plaintiff has shown by a preponderance of the evidence that the "final word as to what bills should be paid or should not be paid," *Purcell v. U.S.,* 1 F.3d at 936, lay with Scheu, not the Plaintiff. Indeed, it is apparent from the record that Plaintiff had no knowledge of the delinquent 1988 taxes, and upon learning of the delinquency for 1988, and the first quarter of 1989, requested authority to pay the taxes, only to be rebuffed by Scheu under threat of loss of employment.

Again, the ability to pay taxes or any other bills stopped in July, 1989, when Scheu changed bank accounts for the business operation and used Scheu's son as a front. It cannot be overlooked that if the Plaintiff was a responsible person, Plaintiff would not have encountered the experience of preparing checks for payment of the taxes, only to have them torn up by Scheu. Certainly Plaintiff had authority to direct the running of the daily operations, but the record shows Plaintiff never was granted the authority to pay delinquent taxes, even if Plaintiff wanted to.

Responsibility being a matter of status, duty and authority, I conclude from the evidence that the Plaintiff did not wield any significant influence over the financial management decisions of the corporation. During the period from January, 1989, to July, 1989, when Plaintiff had check writing authority on the corporate account, it is singularly clear that Plaintiff was not involved in the process of deciding which creditors to pay and which not to pay. Only Scheu assumed those responsibilities. Moreover, by July, 1989, the Plaintiff's authority to write checks terminated, and as a result Plaintiff was completely taken out of the loop of the business decision process. Finally, as an indication of the direct charge taken by Scheu over the business financial operations, only Scheu signed the quarterly returns, ex-

cept for the last return signed by Williams at the request of the IRS, not Scheu.

■ Since the Plaintiff was not a responsible party under § 6672, I further conclude the Plaintiff did not act willfully to evade the payment of the trust fund taxes. It was only Scheu who exercised the voluntary, conscious and intentional decision to prefer trade and employee creditors over the IRS. When the Plaintiff attempted to influence the decision otherwise by preparing checks for tax payments, the Plaintiff was rebuffed and Plaintiff's efforts totally rejected. In sum, the Plaintiff, for the brief period Plaintiff had authority to sign checks, sought to include, not exclude payment to the IRS. Such action falls far short of voluntarily and consciously seeking to pay other creditors while leaving the IRS without payment.

From the foregoing, I conclude the notice of assessments levied by the IRS against the Plaintiff under 26 U.S.C. § 6672 are without legal and factual basis and must be set aside as void.

■ Plaintiff also seeks an award of attorney fees under 26 U.S.C. § 7430. As stated in *In re Grewe*, 4 F.3d 299, 301 (4th Cir.1993):

> In the present case, the specific requirements of § 7430(a) at issue are: (a) whether the proceedings qualify as an "administrative or court proceeding;" (b) whether the proceedings were brought "in connection with the ... collection ... of any tax;" and (c) the meaning of "under this title."

*Grewe* holds that a bankruptcy court qualifies as a court of the United States under § 7430. *Id.* at 305. Also, the present proceeding to seek a determination as to the lawfulness of the tax levy by the IRS satisfies § 7430 because it is not limited to proceedings brought solely under Title 26, but "rather to *any* administrative or court proceeding" brought in connection with "the determination, collection or refund of any 'tax' *imposed* by Title 26. 26 U.S.C. § 7430(a)." *Grewe*, 4 F.3d at 302. (Emphasis in original).

■ Three elements must be satisfied before recovering attorney fees. Plaintiff must (1) exhaust Plaintiff's administrative reme-

dies; (2) be a prevailing party and (3) make a reasonable claim. *Grewe*, 4 F.3d at 305. As to exhaustion of administrative remedies, *Grewe* explains:

> Exhausting administrative challenges to the IRS's filing of a federal tax lien requires the taxpayer to "submit[ ] to the district director of the district having jurisdiction over the dispute a written claim for relief reciting facts and circumstances sufficient to show the nature of the relief requested and that [the] taxpayer is entitled to such relief" and allowing the district director a reasonable time to respond in writing. 26 CFR 301.7430(d) (1992).

4 F.3d at 305–06.

This matter is simply not ripe for decision. Under 28 U.S.C. § 2412(d)(1)(B), it is provided:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party, stating the actual time expended and the rate at which fees and other expenses are computed. . . .

*See also,* F.R.B.P. Rule 7054 and Fed. R.Civ.P. 54(d)(2)(B), requiring a motion for award of attorney fees to be filed 14 days after judgment. There is no administrative file in the record except for Exhibit 1. Therefore, any award of fees must await another day. *In re Brickell Inv. Corp.,* 96 B.R. 400, 403 (Bankr.S.D.Fla.1989).

IT IS ORDERED the Clerk shall enter Judgment for the Plaintiff Raymond Williams, and against the Defendant United States of America, Internal Revenue Service, finding the notice of assessment for taxes and Notices of Federal Tax Lien under 26 U.S.C. § 6672 are void and contrary to law.