T.C. Memo. 2018-73

UNITED STATES TAX COURT

DAVID J. JARRETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29025-15L.                    Filed May 31, 2018.

<u>Charles R. Markham</u>, for petitioner.

<u>Andrea M. Faldermeyer</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case arises from a petition filed in response to a

notice of determination concerning collection action(s) under section 6320 and/or

6330 of the Internal Revenue Code (notice of determination).  We must decide

[*2] whether to sustain the determinations in the notice of determination.[1]  We hold that we will sustain those determinations.

Background

The facts in this case, which the parties submitted under Rule 122,[2] have been stipulated by the parties and are so found.

At all relevant times, including at the time he filed the petition in this case, petitioner resided at a certain address in West Hollywood, California (West Hollywood address).

At all relevant times, petitioner was a member of the board of directors of Hollywood Arts (Hollywood Arts' board), a tax-exempt organization formed in 2006 that provided arts-based education and development to at-risk, runaway, and homeless youths in Hollywood, California.  The Hollywood Arts' board was responsible for the overall policy and direction of Hollywood Arts.  The

---

[1]When referring herein to the determinations in the notice of determination, we are not referring to the determination in that notice that petitioner did not have the right to challenge the underlying tax liabilities. The parties agreed before this case was submitted that petitioner has the right to challenge the underlying tax liabilities.  However, petitioner concedes those liabilities on brief and advances only certain other reasons in support of his position that respondent is precluded from collecting those liabilities.

[2]All Rule references are to the Tax Court Rules of Practice and Procedure. All section, subtitle, and chapter references are to the Internal Revenue Code (Code) in effect at all relevant times.

**[*3]** Hollywood Arts' board had final approval authority over the organization's annual budget. None of the members of the Hollywood Arts' board received any compensation.

From January 25, 2010, until January 2012, petitioner was treasurer of the Hollywood Arts' board, which was an uncompensated and voluntary, but not honorary, position. As Hollywood Arts' treasurer, petitioner had access to Hollywood Arts' accounting books and records. Petitioner's duties in that position included (1) assisting in the preparation of Hollywood Arts' budget, (2) making Hollywood Arts' financial information available to board members and the public, (3) filing each calendar quarter Form 941, Employer's Quarterly Federal Tax Return (Form 941), (4) collecting and paying over to the Internal Revenue Service (IRS) taxes under chapter 21, Federal Insurance Contributions Act, and chapter 24, Collection of Income Tax at Source on Wages, of subtitle C, Employment Taxes,[3] (5) giving a report at each meeting of the Hollywood Arts' board, and (6) chairing Hollywood Arts' finance committee.[4]

---

[3]We shall refer to the taxes imposed by chapter 21 as Social Security taxes and Medicare taxes. We shall refer to the taxes withheld under chapter 24 as taxes withheld on wages. We shall sometimes refer collectively to Social Security taxes and Medicare taxes under chapter 21 and taxes withheld on wages under chapter 24 of subtitle C as employment taxes or trust fund taxes.

[4]Hollywood Arts' finance committee was responsible for (1) developing and
(continued...)

[*4]   In January 2012, petitioner was elected chairman of the Hollywood Arts'
board.

For each of the following taxable periods (sometimes, quarters at issue),
Hollywood Arts filed with the IRS Form 941 on the dates indicated, in which it
showed the following liability for employment taxes:

| Quarter Ended | Date Filed | Liability Shown |
|---|---|---|
| 3/31/2010 | 4/30/2010 | $7,939.25 |
| 6/30/2010 | 10/5/2010 | 7,487.04 |
| 9/30/2010 | 10/31/2010 | 9,413.18 |
| 3/31/2012 | 4/10/2013 | 5,560.24 |
| 6/30/2012 | 4/10/2013 | 4,080.72 |
| 12/31/2012 | 4/10/2013 | 903.03 |

Except for $1,342.46 with respect to the quarter ended on March 31, 2010, and
$4,352.64 with respect to the quarter ended on March 31, 2012, Hollywood Arts
did not pay the employment tax liability shown in Form 941 for any of the quarters
at issue before or with the filing of Form 941 for each of those quarters.

---

[4](...continued)
reviewing the organization's fiscal procedures, (2) developing, reviewing, and
submitting for approval to the Hollywood Arts' board the organization's annual
budget, and (3) reviewing and submitting each quarter to the Hollywood Arts'
board a report showing the organization's income and expenses for each such
quarter.

**[*5]** On March 5, 2011, respondent assigned a revenue officer (first revenue officer) to (1) collect the employment tax liability which Hollywood Arts had shown in Form 941 that it had filed for each of the quarters ended on March 31, June 30, and September 30, 2010 (sometimes, quarters at issue in 2010) and which it had not paid and (2) investigate why Hollywood Arts did not file Form 941 for the quarter ended on December 31, 2010 (first revenue officer's original assignment). In performing that assignment, the first revenue officer determined that not only had Hollywood Arts not paid its employment tax liability for each of the quarters ended on March 31, June 30, and September 30, 2010, which it had shown in Form 941 that it had filed for each of those quarters, it also had not paid its employment tax liability for each of the quarters ended on March 31, June 30, and December 31, 2012 (sometimes, quarters at issue in 2012), which it had shown in Form 941 that it had filed for each of those quarters. Consequently, the first revenue officer expanded the first revenue officer's original assignment to include the quarters at issue in 2012. (We shall sometimes refer to the IRS' examination of Hollywood Arts' employment tax liability for each of the quarters at issue in 2010 and each of the quarters at issue in 2012 as Hollywood Arts' employment tax examination.)

**[*6]**  As part of Hollywood Arts' employment tax examination, the first revenue officer made entries in a so-called integrated collection services history transcript maintained with respect to Hollywood Arts.  Those entries described the first revenue officer's activities during that examination and included notes that that officer had made describing communications held, results of the first revenue officer's investigation, comments on any progress made, actions taken, and the next actions or steps to be taken.

In August 2013, respondent assigned a different revenue officer (second revenue officer) to Hollywood Arts' employment tax examination.  As part of Hollywood Arts' employment tax examination, the second revenue officer made entries in the integrated collection services history transcript maintained with respect to Hollywood Arts.  Those entries described the second revenue officer's activities during that examination and included notes that that officer had made describing communications held, results of the second revenue officer's investigation, comments on any progress made, actions taken, and the next actions or steps to be taken.

The second revenue officer concluded during the fall of 2013 that it would be virtually impossible to collect from Hollywood Arts any unpaid employment taxes for the quarters at issue.  On December 10, 2013, the second revenue officer

[*7] began an investigation into assessing the so-called trust fund recovery penalty under section 6672 (section 6672 penalty) with respect to those unpaid taxes, which he determined totaled $17,609.81 as of that date.  On December 10, 2013, the second revenue officer identified certain officers of Hollywood Arts, including petitioner, as potentially liable for the section 6672 penalty.

On December 10, 2013, the second revenue officer also issued summonses to Bank of America requiring it to produce bank signature cards, corporate resolutions, bank statements, and canceled checks for all of Hollywood Arts' bank accounts for the period January 1 through September 30, 2010 (Bank of America summonses for 2010).

On December 12, 2013, the second revenue officer contacted petitioner by telephone (December 12, 2013 call) and advised him that he would be receiving notice of the Bank of America summonses for 2010.  He also explained to petitioner the section 6672 penalty.  When the second revenue officer attempted to interview petitioner during the December 12, 2013 call, petitioner declined and indicated that he wanted to "consult outside counsel" and to reschedule the interview for early 2014.

Thereafter through early February 2014, the second revenue officer continued his investigation as part of the Hollywood Arts' employment tax examination,

[*8] which included his review in January 2014 of the documents that he had received that month pursuant to the Bank of America summonses for 2010. The second revenue officer concluded on the basis of his investigation that petitioner and Rachel Romanski (Ms. Romanski), Hollywood Arts' executive director, were the only officers of Hollywood Arts on whom the IRS should consider imposing the section 6672 penalty for each of the quarters at issue.

The second revenue officer determined as he continued his investigation in early 2014 to issue additional summonses to Bank of America requiring it to produce bank signature cards, corporate resolutions, bank statements, and canceled checks for all of Hollywood Arts' bank accounts for each of the quarters ended on March 31, June 30, and December 31, 2012 (Bank of America summonses for 2012). On January 28, 2014, the second revenue officer prepared for mailing the Bank of America summonses for 2012 and notices of those summonses addressed to Hollywood Arts, petitioner, and Ms. Romanski, respectively.

As of January 28, 2014, the second revenue officer had concluded that it was proper to issue Letter number 1153, a so-called trust fund recovery penalty letter (Letter 1153), to each of petitioner and Ms. Romanski.

**[*9]** On February 3, 2014, an IRS acting group manager, T. Nichter (group manager Nichter), of the group in which the second revenue officer worked conducted a so-called assessment statute expiration date (ASED) review of the progress of the Hollywood Arts' employment tax examination.

On February 3, 2014, the second revenue officer prepared and submitted for approval to group manager Nichter Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment (Form 4183), with respect to each of the quarters at issue (sometimes, February 3, 2014 Form 4183 or February 3, 2014 section 6672 penalty recommendation form).[5] The February 3, 2014 section 6672 penalty recommendation form showed petitioner's name and Ms. Romanski's name under the heading on that form, "Persons against whom the trust fund recovery penalty is being considered". On the same date on which group manager Nichter received the February 3, 2014 Form 4183, he approved it.

On February 4, 2014, Letter 1153, which was addressed to petitioner's last known address (petitioner's Letter 1153), was mailed to him by certified mail. Specifically, the second revenue officer mailed to petitioner by certified mail in a

---

[5]The February 3, 2014 Form 4183 also pertained to Hollywood Arts' quarter ended on December 31, 2010. As discussed below, the second revenue officer did not include that quarter in an attachment, Form 2751, Proposed Assessment of Trust Fund Recovery Penalty (sometimes, Form 2751), to petitioner's Letter 1153 that he mailed to petitioner.

[*10] window envelope[6] petitioner's Letter 1153, which was addressed to him at his West Hollywood address.[7] As of February 4, 2014, petitioner's West Hollywood address was his last known address for Federal tax purposes.[8]

Attached to the window envelope in which the second revenue officer mailed to petitioner by certified mail petitioner's Letter 1153 was U.S. Postal Service (USPS) Form 3800, Certified Mail Receipt, on which the certified mail tracking number appeared and on which "David J. Jarrett" was handwritten after the following preprinted words on that form: "Sent To". Also attached to the

---

[6]Because the second revenue officer mailed petitioner's Letter 1153 to petitioner in a window envelope, that window envelope did not bear an address label. If petitioner's Letter 1153 had been folded and placed in the window envelope correctly, the West Hollywood address of petitioner printed on that letter that the second revenue officer addressed to him at that address would have been visible through the window in the window envelope.

[7]On February 4, 2014, the second revenue officer mailed by certified mail a separate Letter 1153 to Ms. Romanski. As discussed below, the second revenue officer thereafter determined that Ms. Romanski should not be liable for the section 6672 penalty.

[8]Petitioner's Letter 1153 mailed to petitioner at his West Hollywood address showed on the first page, a few inches to the right and down from petitioner's name and West Hollywood address, the following"Business Name and Address":

HOLLYWOOD ARTS
c/o DAVID JARRETT
5939 HOLLYWOOD BOULEVARD 3RD FLOOR
HOLLYWOOD, CA 90028-5409-391

[*11] window envelope in which the second revenue officer mailed to petitioner by certified mail petitioner's Letter 1153 was USPS Form 3811, Domestic Return Receipt, on which petitioner's West Hollywood address was handwritten. Above petitioner's handwritten West Hollywood address on that USPS form "Hollywood Arts" was handwritten, and below that West Hollywood address "David Jarrett" was handwritten.

Petitioner's Letter 1153 stated in pertinent part:

Our efforts to collect the federal employment or excise taxes due from the business named above have not resulted in full payment of the liability. We therefore propose to assess a penalty against you as a person required to collect, account for, and pay over withheld taxes for the above business.

Under the provisions of Internal Revenue Code section 6672, individuals who were required to collect, account for, and pay over these taxes for the business may be personally liable for a penalty if the business doesn't pay the taxes. These taxes, described in the enclosed Form 2751, consist of employment taxes you withheld (or should have withheld) from the employees' wages (and didn't pay) or excise taxes you collected (or should have collected) from patrons (and didn't pay), and are commonly referred to as "trust fund taxes."

The penalty we propose to assess against you is a personal liability called the Trust Fund Recovery Penalty. It is equal to the unpaid trust fund taxes which the business still owes the government. If you agree with this penalty for each tax period shown, please sign Part 1 of the enclosed Form 2751 and return it to us in the enclosed envelope.

If you don't agree, have additional information to support your case, and wish to try to resolve the matter informally, contact the person

**[\*12]** named at the top of this letter [the second revenue officer] within ten days from the date of this letter.

You also have the right to appeal or protest this action. To preserve your appeal rights you need to mail us your written appeal within 60 days from the date of this letter (75 days if this letter is addressed to you outside the United States). The instructions below explain how to make the request.

\*      \*      \*      \*      \*      \*      \*

You may appeal your case to the local Appeals Office. \* \* \*

The second revenue officer attached Form 2751 to petitioner's Letter 1153. In that form, respondent proposed, inter alia, to assess against petitioner, as a "person responsible", the following section 6672 penalty liability with respect to each of Hollywood Arts' quarters at issue:[9]

---

[9]The section 6672 penalty liability for each of Hollywood Arts' quarters at issue that the second revenue officer proposed to assess against petitioner reflected payments made after Form 941 for each of those quarters had been filed.

[*13]

| Quarter Ended | Section 6672 Penalty |
|---|---|
| 3/31/2010 | $1,617.10 |
| 6/30/2010 | 5,056.02 |
| 9/30/2010 | 6,279.09 |
| 3/31/2012 | 1,207.60 |
| 6/30/2012 | 2,843.03 |
| 12/31/2012 | 606.97 |
| Total | 17,609.81 |

On March 17, 2014, the USPS returned to the IRS the window envelope containing petitioner's Letter 1153 that the second revenue officer had mailed to petitioner on February 4, 2014, by certified mail to his West Hollywood address. The USPS had stamped the following on that envelope: "UNCLAIMED" "NIXIE -- RETURN TO SENDER -- ATTEMPTED -- NOT KNOWN -- UNABLE TO FORWARD".

Petitioner did not receive petitioner's Letter 1153. Consequently, he did not have a prior opportunity to contest whether he is liable for the section 6672 penalty for each of Hollywood Arts' quarters at issue.[10]

---

[10]As discussed below, petitioner concedes on brief that he is a responsible person and that he acted willfully within the meaning of sec. 6672(a). However, as also discussed below, he disputes for other reasons whether he should be required to pay any unpaid employment tax liability for each of the quarters at

(continued...)

**[*14]** On February 12 and March 26, 2014, the second revenue officer interviewed Ms. Romanski with respect to her liability for the section 6672 penalty for each of Hollywood Arts' quarters at issue. That revenue officer concluded on the basis of those interviews and noted on March 26, 2014, in the integrated collection services history transcript maintained with respect to Hollywood Arts that Ms. Romanski did not meet what he characterized in that transcript as "the responsibility and willfulness test" of section 6672(a). Consequently, he changed his original conclusion as to Ms. Romanski, but not as to petitioner, which appeared in the February 3, 2014 section 6672 penalty recommendation form with respect to each of Hollywood Arts' quarters at issue (i.e., the February 3, 2014 Form 4183), that he had prepared and submitted to group manager Nichter for approval on February 3, 2014, and which group manager Nichter approved on the same date.

On March 31, 2014, the second revenue officer noted in the integrated collection services history transcript maintained with respect to Hollywood Arts that the period of limitations for assessing the section 6672 penalty for each of Hollywood Arts' quarters at issue in 2010 was to expire on May 5, 2014. That was because he had sent petitioner's Letter 1153 to petitioner on February 4, 2014.

---

[10](...continued)
issue in 2010.

**[\*15]** On the same date, the second revenue officer also noted the following in that transcript: "RO [revenue officer] may need to do a quick assessment because the ASED [i.e., the assessment statute expiration date] will expire within 30 days of 4/5/14."

On April 3, 2014, the second revenue officer consulted Internal Revenue Manual (IRM) pt. 5.7.4.7.2 (Aug. 5, 2013), titled "Rescission of Proposed Assessment", because he had changed his conclusion as to Ms. Romanski that appeared in the February 3, 2014 Form 4183. Also on April 3, 2014, the second revenue officer submitted a request to group manager Nichter for his approval (1) to amend the February 3, 2014 Form 4183 as to Ms. Romanski only by preparing another Form 4183 in which he would indicate that Ms. Romanski is not liable for the section 6672 penalty for each of Hollywood Arts' quarters at issue and (2) to prepare and issue to Ms. Romanski Letter 1153W, Proposed Trust Fund Recovery Penalty Rescission Notification (Letter 1153W), the letter that the IRS used to rescind any Letter 1153 that it had previously issued.

On April 3, 2014, the date on which group manager Nichter received the second revenue officer's request for approval to amend the February 3, 2014 Form 4183 as to Ms. Romanski only and to prepare and issue to her Letter 1153W (Ms. Romanski's Letter 1153W), that group manager approved that request. On the

[*16] same date on which group manager Nichter approved the second revenue officer's request, that revenue officer prepared an amended Form 4183 which was amended only insofar as it pertained to Ms. Romanski.[11]  Although the second revenue officer showed in the amended Form 4183 under the heading "Persons against whom the trust fund recovery penalty is being considered" petitioner's name and Ms. Romanski's name, he also showed under Ms. Romanski's name the following pertinent language:  "Ms. Romanski is not liable for the TFRP [trust fund recovery penalty]."

On April 4, 2014, the second revenue officer signed and submitted Form 4183 amended as to Ms. Romanski only to group manager Nichter for his approval.  On the same date, that group manager approved that amended Form 4183 (April 4, 2014 amended Form 4183).

On April 8, 2014, the second revenue officer mailed Ms. Romanski's Letter 1153W to Ms. Romanski.

On April 8, 2014, the second revenue officer requested a quick assessment of the section 6672 penalty against petitioner for Hollywood Arts' quarters at

---

[11]As was of true of the February 3, 2014 Form 4183, the amended Form 4183 pertained not only to the quarters at issue but also to Hollywood Arts' quarter ended on December 31, 2010.  As discussed above, the second revenue officer did not include that quarter in Form 2751 attached to petitioner's Letter 1153.

[*17] issue. In doing so, the second revenue officer prepared and signed on that date Form 2749, Request for Trust Fund Recovery Penalty Assessment, pertaining to all six of Hollywood Arts' quarters at issue and a separate Form 2859, Request for Quick or Prompt Assessment (Form 2859), pertaining to each of those six quarters. Group manager Nichter signed each Form 2859 on April 8, 2014.

On April 16, 2014, respondent assessed the following section 6672 penalty against petitioner for each of Hollywood Arts' quarters at issue:[12]

| Quarter Ended | Section 6672 Penalty |
| --- | --- |
| 3/31/2010 | $1,620.56 |
| 6/30/2010 | 5,066.84 |
| 9/30/2010 | 6,292.52 |
| 3/31/2012 | 1,210.18 |
| 6/30/2012 | 2,849.11 |
| 12/31/2012 | 608.27 |
| Total | 17,647.48 |

Also on April 16, 2014, respondent mailed Form 3552, Notice of Tax Due on Federal Tax Return, to petitioner at his last known address (i.e., petitioner's West Hollywood address) for each of Hollywood Arts' quarters at issue.

---

[12]The section 6672 penalty for each of Hollywood Arts' quarters at issue that respondent assessed against petitioner on April 16, 2014, included interest as provided by law.

[*18] On June 5, 2014, respondent issued to petitioner a final notice of intent to levy and notice of your right to a hearing (notice of levy) with respect to the respective section 6672 penalties for Hollywood Arts' quarters at issue.

On June 24, 2014, respondent issued to petitioner a notice of Federal tax lien filing and your right to a hearing under IRC section 6320 (notice of lien) with respect to the respective section 6672 penalties for Hollywood Arts' quarters at issue.

On June 29, 2014, petitioner submitted Form 12153, Request for Collection Due Process or Equivalent Hearing (Form 12153), with respect to the notice of levy and the notice of lien that he had received. Respondent assigned a settlement officer to petitioner's Form 12153.

On June 3, 2015, the settlement officer sent petitioner and his authorized representative a letter informing them that respondent's Appeals Office in Los Angeles (Appeals Office) had received petitioner's Form 12153. On the same date, the settlement officer sent another letter to petitioner and his authorized representative, in which he described the hearing process under sections 6320 and 6330 (Appeals Office hearing) and scheduled a telephone Appeals Office hearing on July 2, 2015. (We shall refer to the Appeals Office hearing with respect to petitioner's Form 12153 as petitioner's Appeals hearing.)

[*19] On June 18, 2015, petitioner's authorized representative sent a letter (June 18, 2015 letter) to the settlement officer, in which he requested that petitioner's Appeals hearing be conducted through correspondence. That representative also proposed in his letter that petitioner mail a check to the settlement officer in an amount that would pay all of the respective unpaid employment tax liabilities for Hollywood Arts' quarters ended on March 31, June 30, and December 31, 2012. Petitioner's representative further stated in his June 18, 2015 letter to the settlement officer that petitioner did not intend to offer any other collection alternatives during petitioner's Appeals hearing.

On July 29, 2015, the settlement officer responded by letter (July 29, 2015 letter) to petitioner's authorized representative's June 18, 2015 letter. In the July 29, 2015 letter, the settlement officer provided petitioner and his authorized representative instructions for petitioner's payment of the respective unpaid employment tax liabilities for Hollywood Arts' quarters ended on March 31, June 30, and December 31, 2012, as well as for its quarter ended on March 31, 2010, because only a very small amount was unpaid for that quarter. The settlement officer also included with his July 29, 2015 letter the paperwork for petitioner to complete in order to request a partial release of the lien that respondent had filed, as set forth in the notice of lien.

**[\*20]** In addition to the matters that petitioner's authorized representative identified in his June 18, 2015 letter to the settlement officer, petitioner raised the following issues during petitioner's Appeals hearing: his underlying liability for the respective section 6672 penalties for the quarters at issue, the validity of the IRS' assessment of those penalties, withdrawal of the lien, and the appropriateness of the proposed collection actions.[13]

As part of his consideration of petitioner's Form 12153 and the arguments advanced during petitioner's Appeals hearing, the settlement officer reviewed petitioner's Letter 1153 and its mailing envelope. He also reviewed IRS transcripts and verified that the address on petitioner's Letter 1153 was petitioner's last known address as of February 4, 2014. The settlement officer verified that the IRS mailed petitioner's Letter 1153 to petitioner's last known address via certified mail on February 4, 2014, and that the USPS had marked that letter "unclaimed" and had returned it to the IRS on March 17, 2014.

As part of his consideration of petitioner's Form 12153 and the arguments advanced during petitioner's Appeals hearing, the settlement officer considered

---

[13]At no point during the Appeals Office hearing did petitioner's authorized representative argue that the second revenue officer failed to exercise due diligence by not taking additional steps to notify petitioner of the proposed assessment of the section 6672 penalties for the quarters at issue after the USPS returned to the IRS as unclaimed petitioner's Letter 1153.

[*21] Mason v. Commissioner, 132 T.C. 301 (2009), and concluded that pursuant to that case the assessments that the IRS had made for all of the quarters at issue were valid regardless of whether petitioner received petitioner's Letter 1153.

The settlement officer also considered as part of his consideration of petitioner's Form 12153 and the arguments advanced during petitioner's Appeals hearing petitioner's arguments (1) that petitioner was not a willful or responsible person subject to the section 6672 penalty and (2) that he satisfied the exception under section 6672(e) (section 6672(e) exception) from that penalty for members of the board of directors of tax-exempt organizations who are volunteers.

As part of his consideration of petitioner's Form 12153 and the arguments advanced during petitioner's Appeals hearing, the settlement officer reviewed the documents in the IRS' administrative record relating to Hollywood Arts' employment tax examination, including its canceled checks and bank statements and notes of interviews with certain employees of Hollywood Arts.

After his consideration of petitioner's arguments and his review of pertinent law and certain information that petitioner had provided, the settlement officer determined that petitioner was not permitted to dispute his underlying liability for the respective section 6672 penalties for the quarters at issue. That was because, according to the settlement officer, petitioner had had a prior opportunity to

**[\*22]** dispute that underlying liability when the IRS had mailed him petitioner's Letter 1153.

The settlement officer also determined after his consideration of petitioner's arguments and his review of the IRS' administrative record pertaining to petitioner's liability for the respective section 6672 penalties for the quarters at issue and pertinent law that the period of limitations for the IRS' assessment of the respective section 6672 penalties for the quarters at issue in 2010 was extended to May 5, 2014, because the IRS had mailed petitioner's Letter 1153 to him on February 4, 2014. Consequently, according to the second revenue officer, the IRS' assessment on April 16, 2014, of those penalties for the quarters at issue in 2010 was timely.

In addition, the settlement officer determined as a result of his consideration of petitioner's arguments and his review of pertinent law and certain information that petitioner had provided that petitioner (1) did not qualify for the section 6672(e) exception and (2) did not provide any information to support withdrawal of the notice of lien filed as set forth in the notice of lien and did not satisfy the criteria prescribed in section 6323(j) for withdrawal of a notice of lien.

On October 22, 2015, the Appeals Office issued to petitioner the notice of determination sustaining the filing of the lien and the proposed levy with respect

**[\*23]** to the respective unpaid section 6672 penalties for the quarters at issue.[14]

The notice of determination stated in pertinent part:

Summary of Determination
You had a prior opportunity to appeal the proposed assessment of the Trust Fund Recovery Penalty. Therefore we are unable to consider it again per Internal Revenue Code section 6330. You also declined to offer any collection alternatives stating that you weren't liable. Therefore we are unable to offer any to you. The filing of the Notice of Federal Tax Lien is sustained as is the proposed levy by Collection.

An attachment to the notice of determination stated in pertinent part:

## SUMMARY AND RECOMMENDATION

You filed a request for a Collection Due Process (CDP) hearing under Internal Revenue Code (IRC) § 6320 and § 6330 following the receipt of Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. The letter was issued by the Field Collection Office in Los Angeles, CA, which issued the notice on June 24, 2014 with a deadline to file a request for the CDP hearing of July 31, 2014. You also received a Letter 1058, Final Notice - Notice of Intent to Levy and Your Notice of Your Right to a Hearing, from the same Santa Barbara Field Collection Office. The Letter 1058 was dated June 5, 2014 and by law, you had until July 4, 2014 to file a request for a CDP hearing. Your Form 12153 requesting a CDP hearing was received July 1, 2014. Therefore, it was a timely request since it was submitted by the due date stated on the Letter 3172 and within the deadline of the L-1058.

---

[14]As of the date on which respondent issued the notice of determination, petitioner had not entered into an installment agreement to satisfy the respective unpaid section 6672 liabilities for the quarters at issue.

[*24] On your request for a CDP hearing, you specifically stated that you are not proposing any collection alternatives. A conference was held at your request via correspondence. You[r] final communication stated that you are not raising any collection alternatives because you disagreed with the liability issue for the periods ending June 30, 2010 and September 30, 2010. However, you did state that you would be paying the other two periods in full within 60 days. You requested a statement as to the balance due on these liabilities. A check of our internal computer systems indicates that the periods that you intend on paying have the following balances due as of October 30, 2015[.]

You did not propose any collection alternatives because you stated that you were not liable for the Trust Fund Recovery Penalty. A review of the administrative file indicates that you had a prior opportunity to claim appeal [sic] the proposed assessment, but you failed to do so. In addition, you [sic] a review of the file clearly indicates that you are a responsible person and that you willfully failed to pay over the trust fund taxes. The details of my findings are outlined below. Therefore the proposed levy action by collection is sustained and as is [sic] the filing of the Notice of Federal Tax Lien (NFTL).

**BRIEF BACKGROUND**

The tax liability resulted when you were assessed the Trust Fund Recovery Penalty (TFRP) [sic] a Non-Profit Organization called Hollywood Arts. Hollywood Arts was engaged in arts education, job readiness programs, and industry internships to homeless individuals. You served as the Chairman of the organization. Hollywood Arts has now closed its doors.

Originally, your case was assigned to another Settlement Officer. Upon the reassignment of the Settlement Officer, your case was subsequently transferred to me.

On June 3, 2015, I mailed a substantial contact letter to you and your representative. On July 1, 2015, I received a voice mail message

from your representative stating that he wanted to have a conference by correspondence. After numerous exchanges of faxes and letters, that process has now ended. Based upon the facts below, I find that you are liable for the TFRP and since you have declined to submit any collection alternatives, I am therefore required to sustain the filing of the NFTL and the proposed levy action by Collection.

## DISCUSSION AND ANALYSIS

### 1. Verification of Legal and Procedural Requirements

The requirements of applicable law or administrative procedures have been met and the actions taken or proposed were appropriate under the circumstances.

- I have verified through transcript analysis that the assessment was properly made per IRC § 6201 for each tax and period listed on the CDP notice.

- The notice and demand for payment letter was mailed to your last known address, within 60 days of the assessment, as required by IRC § 6303.

- The Notice of Federal Tax Lien (NFTL) was filed on June 20, 2014 and as required by IRC § 6320, you were mailed a copy of the NFTL and a letter advising you of your right to file a request for a CDP hearing.

- I have verified the collection period allowed by statute to collect the tax has been suspended by the appropriate computer code for the tax periods at issue.

- There is no office [sic] in compromise or installment agreement pending or currently in effect. There is also no pending innocent spouse request.

[*26] • There is no pending bankruptcy case, nor did you have a pending bankruptcy case at the time of the CDP notice.

I have had no prior involvement with you concerning the applicable tax periods before this CDP case. Collection followed all legal and procedural requirements and the actions taken or proposed were appropriate under the circumstances.

**2. Issues Raised by You**

**A. Challenges to the Existence of Amount of Liability:**

You challenged the liability in a number of ways:

(1) Assessment not within the Statutory Period - You stated that the assessments were [sic] made on April 16, 2014 were illegal because that [sic] authority for making the assessments expired on April 15, 2014 per Internal Revenue Code * * * § 6672. However, IRC § 6672(b)(3) clearly states that the statute for making the assessments won't expire until at least 90 days after the mailing of the Letter-1153 proposing the assessment. In this instance, the Letter-1153 was not mailed until February 4, 2014. Therefore, the Assessment Statute expiration Date (ASED) would not have expired until May 5, 2014. The assessments were lawfully and timely made.

(2) You also claimed that you did not receive proper notification of the proposed assessments. A review of our internal records indicated that the Letter 1153 was mailed to your last known address on February 4, 2014. This is the address of * * * That was you[r] official address of record at the time the letter was and it has been your official Last Known Address in 2011. It still is you[r] current address of record. The Letter-1153 was mailed via certified mail # 7008-1300-0000-6719-8394. The physical envelope is clearly marked "UNCLAIMED" and it was returned to the IRS on March 17, 2014.

[*27] (3) With regard to the non-receipt of the Letter-1153, you stated that since you didn't receive the letter that it wasn't valid. However, the very court case that you cite, <u>Mason v. Commissioner</u>, 132 TC 14 [sic] stated, "Our finding that petitioner (Mason) did not receive the Letter 1153 did not invalidate the trust fund penalty assessment."

(4) You have stated that the IRS shouldn't have assessed the TFRP against you because you were an unpaid, volunteer member of a board of a non-profit organization, Policy Statement 5-14. A key condition of this statement is that the volunteer did not participate in the day-to-day or financial operations of the organization. However, a review of the financial documents indicated that you were not only involved in the day-to-day operations, but you were one of the key decision makers. In fact, your representative stated that they had a rubber stamp made of your signature just in case you weren't in the office. Clearly, you were involved in a day-to-day operation of the business.

(4) Even though there was ample evidence to decline to consider your liability in this matter, I still reviewed the TFRP file. You took the position that you were merely an unpaid volunteer who was not involved in the day-to-day operation of the business. However, a review of the file indicated that you held the title of Chairman. The record also reflects that you signed checks on behalf of the corporation during the unpaid quarters in question. Furthermore, the bank statements indicate that sufficient funds were in place had you elected to pay the delinquent tax liabilities.

(5) There are statements from other employees in the file indicating that you had the control over the money, finance[s], and the hiring and firing of employees.

(6) Your representative stated that there was a rubber stamp made of a signature what was used to sign a lot of the checks and tax

returns.  Since you've indicated that you were just an unpaid volunteer of the charity, why would there have been a necessity to have a rubber stamp made of your signature?

In view of the above facts, I came to the conclusion that you would have been deemed to be liable for the TFRP even if you could have raised the issue considering that you declined an early opportunity to do so.

**B. Collection Alternatives Offered by Taxpayer:**

Initially you stated that you weren't interested in any collection alternatives since you didn't owe the tax.  While you still have taken the same position with regard to the two large unpaid liabilities, you have stated stated [sic] that the collection alternative is to full pay the smaller amounts owed within 14 days of September 28, 2015, the date of your last communication with this office.  Since you had been advised in a letter/fax dated July 29, 2015, that any portion of the tax liability could be paid off at any time, no payment has been received by either this office or the Revenue Officer for these amounts. Therefore there is no need to delay any further the moving forward of this case.  Per your request, the amounts that are currently owed are listed below.

| Type of Tax | Period | Balance Due |
|---|---|---|
| Trust Fund Recovery Penalty | 03/31/2010 | $0.20 |
| Trust Fund Recovery Penalty | 06/30/2010 | $5,224.44 |
| Trust Fund Recovery Penalty | 09/30/2010 | $6,575.92 |
| Trust Fund Recovery Penalty | 12/31/2010 | $17.66 |
| Trust Fund Recovery Penalty | 06/30/2012 | $1.04 |
| Trust Fund Recovery Penalty | 12/31/2012 | $9.85 |
| | Total Due: | $11,829.11 |

[*29] You have declined to consider any collection alternatives for the periods ending 06/30/2010 and 09/30/2010 because you stated that in your opinion you are not liable for these periods. You have also stated that the other four periods will be paid by your [sic] within 14 days. Therefore, there is no further action to be done by this office with regard to your requests.

**C. Lien Withdrawal**

I considered whether any of the criteria for allowing withdrawal of the lien existed in your case.

IRC § 6323(j) allows the withdrawal of a filed NFTL without full payment and without prejudice under the following conditions:

- The filing of the NFTL was premature or otherwise not in accordance with administrative procedures of the Internal Revenue Service,

- The taxpayer had entered into an installment agreement under IRC § 6159 to satisfy the tax liability for which the lien was imposed by means of installment payments, unless such agreement provides otherwise,

- Withdrawal of the lien will facilitate collection of the tax liability, or

- With the consent of the taxpayer or the National Taxpayer Advocate (NTA), the withdrawal of such notice would be in the best interest of the taxpayer (determined by the NTA) and the United States.

A NFTL may be withdrawn in connection with the taxpayer entering into an installment agreement but, as described above, you do not qualify for an installment agreement. Mo[r]eover, there is nothing else in the administrative file that indicates withdrawal of the filed lien should be considered and you have provided no additional

[*30] information that indicates the withdrawal of the filed NFTL should be considered.

**E. Other issues that You Raised:**

You have requested that we have [sic] issue a partial lien release with regard to the NFTL that's of record. As was explained to you in the letter/fax dated July 29, 2015, Appeals neither records nor releases NFTL's. You were sent Publication 1450 on how to apply for a Certificate of Release along with Publication 4235 which advised you where such application should be sent.

**3. Balancing of need for efficient collection with taxpayer concern that the collection action be no more intrusive than necessary.**

I balanced the competing interest in finding the filing of the NFTL appropriate as well as the proposed levy. You have proposed payment in full of some of the liabilities, but payment has not been received yet. You have stated also that you are still of the opinion that you are not liable for the TFRP in spite of the evidence to the contrary. Retaining the NFTL balances the need for efficient collection against your concern that it be no more intrusive than necessary. The filing of the NFTL is sustained, as is the proposed levy.

## Discussion

We start by summarizing applicable provisions of the Code and pertinent caselaw that will be helpful in our consideration of the parties' respective positions with respect to the IRS' assessment of the section 6672 penalties at issue, which the Appeals Office determined in the notice of determination is valid.

**[*31]** An employer is required to withhold or collect from an employee's wages and thereafter "pay over" to the Federal Government (Government) the employee's share of (1) Social Security tax, see secs. 3101(a), 3102(a); (2) Medicare tax, see secs. 3101(b)(1), 3102(a), and (3) Federal income tax, see secs. 3402(a)(1), 3403. Federal taxes that an employer withholds from an employee's wages are "held to be a special fund in trust for the United States." Sec. 7501(a). Consequently, they are known as "trust fund taxes". See Pollock v. Commissioner, 132 T.C. 21, 25 n.10 (2009).

One of the means of ensuring that the employer collects and pays over to the Government the trust fund taxes is section 6672. See Purcell v. United States, 1 F.3d 932, 936 (9th Cir. 1993). Section 6672(a) provides in pertinent part: "Any person required to collect, truthfully account for, and pay over any tax * * * who willfully fails to collect such tax, or truthfully account for, and pay over any tax * * * shall * * * be liable to a penalty equal to the total amount of the tax * * * not collected, or not accounted for and paid over." As pertinent here, section 6671(a) provides that the section 6672 penalty is to be paid upon notice and demand by the Commissioner of Internal Revenue (Commissioner) and is to be assessed and collected in the same manner as taxes.

**[*32]** Liability for the section 6672 penalty may be imposed upon any "responsible person" who "acted willfully in failing to collect or pay over * * * withheld taxes." Davis v. United States, 961 F.2d 867, 869-870 (9th Cir. 1992). A "responsible person" is one who has the "'final word as to what bills should or should not be paid, and when.'" Purcell, 1 F.3d at 936 (quoting Wilson v. United States, 250 F.2d 312, 316 (9th Cir. 1958)). Failure to collect or pay over withheld taxes is "willful" when it results from a "'voluntary, conscious and intentional act to prefer other creditors over the United States.'" Id. at 938 (quoting Davis, 961 F.2d at 871).

The liability of a responsible person for the section 6672 penalty is separate and distinct from the underlying trust fund tax liability of an employer. See Duncan v. Commissioner, 68 F.3d 315, 318 (9th Cir. 1995), aff'g on this point, rev'g and remanding on other points T.C. Memo. 1993-370; Mason v. Commissioner, 132 T.C. at 321; Solucorp, Ltd. v. Commissioner, T.C. Memo. 2013-118, at *12. However, the IRS collects the total amount of the underlying trust fund tax liability only once. See Weber v. Commissioner, 138 T.C. 348, 358 (2012).

To ensure that the total amount of the underlying trust fund tax liability is collected only once, the IRS cross-references payments against the trust fund tax liability of an employer and payments against the section 6672 penalty liability of

**[\*33]** a responsible person, see IRM pt. 5.19.14.3.5 (Jan. 13, 2016), and those payments ultimately reduce the amount of the section 6672 penalty liability of each responsible person, see Weber v. Commissioner, 138 T.C. at 358.

Petitioner states on brief: "[T]he petitioner will only be raising the issues of whether or not the petitioner is not liable due to an improper notice or other procedural defect in the [section] 6672 assessment process * * *. The petitioner is not going to be contesting liability on the basis of personal willfulness or responsibility." We conclude that petitioner concedes on brief (1) that he is a responsible person and that he acted willfully within the meaning of section 6672(a)[15] and (2) that he is not contesting under section 6330(c)(2)(B) the existence or the amount of the underlying liability for the respective section 6672 penalties for (1) the quarters at issue in 2010, and (2) the quarters at issue in 2012.

Petitioner also states on brief that the respective section 6672 penalties for the quarters at issue in 2012 "have now been paid in full", that he "considers them moot and will raise no issues in regards to them with respect to either liability or procedurally", and that he "does not consider them to be at issue and will therefore not address them further." Petitioner added the following footnote to these

---

[15]Petitioner does not take the position on brief, as he did during petitioner's Appeals hearing, that he qualifies for the section 6672(e) exception. We conclude that petitioner has abandoned taking any such position here.

**[*34]** statements: "This is not meant to preclude the court from addressing 2012 in any of its findings if it sees fit."

We are unwilling to allow petitioner to concede and abandon any argument regarding the section 6672 penalties for the quarters at issue in 2012 and then in the same breath, so to speak, to place those penalties at issue if the Court were to decide to ignore petitioner's concession of, and abandonment of any argument with respect to, those penalties. We conclude that petitioner has conceded, and abandoned advancing any argument with respect to, any of the respective section 6672 penalties for the quarters at issue in 2012. We shall not consider those penalties or decide any questions that might remain with respect to them.

On brief, petitioner sets forth the following issues for us to decide regarding the respective section 6672 penalties for the quarters at issue in 2010:

1. Can respondent meet its burden of proof with the stipulated evidence that the 1153 (DO) notice was correctly mailed to the petitioner's last known address on February 4th, 2014?

2. Assuming arguendo that the 1153 (DO) notice can be shown to have been mailed to the last known address, does respondent's Revenue Officer incur any additional responsibility to perform any additional actions as "reasonable diligence" when the certified mail was returned to him "unclaimed" on March 17, 2014?

3. What is the consequence to the respondent when the Revenue Officer issues Letter 1153 (DO) BEFORE receiving approval from the group manager in apparent violation of IRC 6751(b)?

**[*35]**    (Although managerial approval was received subsequent to the proposal)

4.  Was the trust fund recovery assessment made on April 16, 2014 valid with respect to the 2010 tax year?

It is petitioner's position that we should not sustain the determinations in the notice of determination. That is because, according to petitioner, (1) the second revenue officer did not mail petitioner's Letter 1153 to his last known address (petitioner's last known address contention); (2) the second revenue officer did not exercise due diligence by taking additional steps to notify petitioner about the proposed assessment of the respective section 6672 penalties for the quarters at issue in 2010 after the USPS returned to the IRS as unclaimed petitioner's Letter 1153 (petitioner's due diligence contention); and (3) the period of limitations prescribed by section 6672(b) had expired as of April 16, 2014, the date on which the IRS assessed the respective section 6672 penalties for the quarters at issue in 2010 (petitioner's statute of limitations contention). In the event that we were to agree with petitioner's last known address contention, petitioner's due diligence contention, and/or petitioner's statute of limitations contention, petitioner maintains that the notice of determination and the IRS' assessment of the respective section 6672 penalties for the quarters at issue in 2010 are invalid and that consequently we should reject the determinations in that

[*36] notice to sustain the notice of lien and the notice of levy with respect to those quarters.

Petitioner also advances a fourth contention on brief that the IRS did not comply with the requirements of section 6751(b)(1) (petitioner's section 6751(b)(1) contention).[16]  In the event that we were to agree with petitioner's section 6751(b)(1) contention, petitioner does not offer his view as to the consequence of the IRS' failure to comply with section 6751(b)(1).  Instead, he states on brief:  "Petitioner is clearly aware that this approval [required by section 6751(b)(1)] was obtained subsequent to the issuance [of the] proposed assessment of the [section 6672] penalty and perhaps the technical violation of [section] 6751(b) if there is one at all is no more than a 'foot fault'.  However, petitioner does wish to raise it."

We review for abuse of discretion petitioner's contentions, none of which places at issue the existence or the amount of the underlying liability for the respective section 6672 penalties for the quarters at issue in 2010.  See Lee v. Commissioner, 144 T.C. 40, 50 (2015); Sego v. Commissioner, 114 T.C. 604, 610

---

[16]We shall sometimes refer collectively to petitioner's last known address contention, petitioner's due diligence contention, petitioner's statute of limitations contention, and petitioner's section 6751(b)(1) contention as petitioner's contentions.

**[*37]** (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs when a determination is arbitrary, capricious, or without sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

We consider first petitioner's last known address contention. In order to impose a section 6672 penalty, section 6672(b)(1) requires the IRS to notify the taxpayer in person or in writing by mail to an address as determined under section 6212(b) that the taxpayer will be subject to an assessment of that penalty. Pursuant to section 6212(b)(1), a notice of deficiency mailed to a taxpayer's "last known address" is valid even if the taxpayer never receives that notice. See, e.g., <u>Frieling v. Commissioner</u>, 81 T.C. 42, 52 (1983).

In cases like the present case involving the section 6672 penalty, the IRS mails Letter 1153 to the taxpayer. See <u>Mason v. Commissioner</u>, 132 T.C. at 322. Pursuant to section 6672(b)(1) which incorporates the mailing address requirements of section 6212(b)(1) and the caselaw thereunder, Letter 1153 mailed to a taxpayer's last known address is valid even if the taxpayer never receives that letter. See <u>Mason v. Commissioner</u>, 132 T.C. at 322-323.

The Commissioner bears the burden of showing the proper mailing of the notice of deficiency, see <u>Coleman v. Commissioner</u>, 94 T.C. 82, 90 (1990), and the

[*38] Commissioner's production of a properly completed USPS certified mail list will result in the presumption of the proper mailing of that notice, see United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984). However, the Commissioner is not required to produce a USPS certified mail list if the Commissioner produces evidence that is otherwise sufficient to establish proper mailing. See Coleman v. Commissioner, 94 T.C. at 90. Where the existence of a notice of deficiency is not in dispute, the Commissioner must show only the actual timely mailing of the notice of deficiency. See id.

We concluded in Mason v. Commissioner, 132 T.C. at 318, that "[w]hen a Letter 1153 is mailed, the Commissioner must follow the same mailing procedures that are provided for notices of deficiency in section 6212(b)" and that "the same evidence that establishes that the Commissioner mailed a notice of deficiency to a taxpayer's last known address should be sufficient to establish that the Commissioner properly sent a Letter 1153."

In the present case, the parties stipulated that on February 4, 2014, petitioner's Letter 1153 was mailed to petitioner's last known address (parties' last known address stipulation). In total disregard of that stipulation, petitioner takes the

**[\*39]** position on brief that petitioner's Letter 1153 was not mailed to petitioner's last known address.[17]

Rule 91(e) provides that a stipulation is to be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation unless we otherwise permit or those parties otherwise agree. Rule 91(e) further provides that we will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that we may do so where justice requires.

We have concluded that, "[w]ith 'justice' as our standard, we do have broad discretion to determine [under Rule 91(e)] when it is appropriate to set aside a stipulation." Lovenguth v. Commissioner, T.C. Memo. 2007-70, 2007 WL 922231, at *3. However, we have also concluded that our discretion in setting aside a stipulation under Rule 91(e) "is tempered by the importance of making

---

[17]In support of his contention on brief that petitioner's Letter 1153 was not mailed to petitioner's last known address, not only does petitioner ignore the parties' last known address stipulation, he also advances certain arguments which rely on certain alleged facts that are not established by the record and which speculate about certain other alleged facts that also are not established by the record. In addition, in support of petitioner's last known address contention, petitioner misstates on brief the requirements of sec. 6212(b) and misapplies certain caselaw. Finally, petitioner argues on brief that respondent has not satisfied respondent's burden of showing that the second revenue officer mailed petitioner's Letter 1153 to his last known address. On the record before us, we reject the arguments described in this footnote that petitioner makes in support of petitioner's last known address contention.

[*40] stipulations stick--we enforce stipulations unless not just 'injustice,' but 'manifest injustice' would result." Id. In exercising our discretion under Rule 91(e), we may "consider factors that might not be sufficient to upset a contract." Id. at *4. That is to say, "something less than a contractual defense is a permissible ground for letting one party to a pretrial stipulation out of his agreement." Id.

Based upon of our examination of the entire record before us, we find that justice does not require us to set aside the parties' last known address stipulation. Our examination of that record did not disclose any evidence that contradicts that stipulation, let alone clearly contradicts that stipulation, cf. Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). To the contrary, we have found facts on the basis of the record that are consistent with and that totally support the parties' last known address stipulation.

On the record before us and pursuant to applicable sections of the Code and apposite caselaw, we reject petitioner's last known address contention.

We turn next to petitioner's due diligence contention. Petitioner maintains that the second revenue officer should have taken additional steps to notify petitioner about the proposed assessment of the section 6672 penalties for the quarters at issue in 2010 after the USPS returned to the IRS as unclaimed petition-

[*41] er's Letter 1153.[18]  In advancing that argument, petitioner relies on Jones v.

Flowers, 547 U.S. 220 (2006), Mulvania v. Commissioner, 769 F.2d 1376 (9th

Cir. 1985), aff'g T.C. Memo. 1984-98, and Wallin v. Commissioner, 744 F.2d 674

(9th Cir. 1984), rev'g T.C. Memo. 1983-52.  We find those cases to be materially

distinguishable from the instant case and petitioner's reliance on them to be

misplaced.

Petitioner's due diligence contention not only relies on inapposite caselaw,

it also fails to acknowledge and apply applicable caselaw that rejects that con-

tention.  As discussed above, pursuant to section 6672(b)(1) which incorporates

the mailing address requirements of section 6212(b)(1) and the caselaw

thereunder, Letter 1153 mailed to a taxpayer's last known address is valid even if

the taxpayer never receives that letter.

As the Court of Appeals for the Ninth Circuit, the court to which an appeal

in this case would normally lie, concluded in King v. Commissioner, 857 F.2d

676, 681 (9th Cir. 1988), aff'g on other grounds 88 T.C. 1042 (1987), involving a

notice of deficiency:

---

[18]Respondent argues that petitioner did not raise petitioner's due diligence contention during petitioner's Appeals hearing and that therefore respondent could not have abused respondent's discretion in failing to consider any such contention. We agree.  For the sake of completeness, we nonetheless address petitioner's due diligence contention.

**[\*42]** Under I.R.C. § 6212(b), validity of the notice turns on whether the IRS used the last known address when the notice was <u>mailed</u>. Nothing in the statute suggests that the IRS is obligated to take additional steps to effectuate delivery if the notice is returned; indeed, a notice mailed to the last known address is sufficient even if it is never received. <u>Wallin</u>, 744 F.2d at 676. Consequently, we do not believe that <u>Cool Fuel</u>[, Inc. v. Connett, 685 F.2d 309 (9th Cir. 1982)] imposes a duty of reasonable diligence beyond the time that the notice is mailed. * * *

We also rejected an argument similar to petitioner's due diligence contention in <u>Hickey v. Commissioner</u>, T.C. Memo. 2009-2, 2009 WL 20983, at \*4. There, the taxpayer "argue[d] that the assessment of the trust fund recovery penalty was improper because he did not receive the notice the IRS sent to him and because the IRS made no further effort to notify him of the proposed assessment after the USPS returned the unclaimed notice to the IRS." <u>Id.</u> In rejecting that argument, we relied on section 6672(b)(1) which incorporates the mailing requirements of section 6212(b) and caselaw thereunder. <u>See id.</u> at \*4-\*5.

On the record before us and pursuant to applicable sections of the Code and apposite caselaw, we reject petitioner's due diligence contention.

We consider now petitioner's statute of limitations contention. Petitioner maintains that the period of limitations prescribed by section 6672(b) had expired when the IRS assessed on April 16, 2014, the respective section 6672 penalties for the quarters at issue in 2010. Although not altogether clear, it appears that peti-

**[*43]** tioner's support for that conclusion is his contention that the second revenue officer did not mail petitioner's Letter 1153 to petitioner's last known address. We have rejected petitioner's last known address contention. A fortiori, we reject petitioner's statute of limitations contention.

For the sake of completeness, we explain briefly why the period of limitations for assessing the respective section 6672 penalties for the quarters at issue in 2010 had not expired as of April 16, 2014, the date on which the IRS assessed those penalties. Pursuant to section 6672(b)(3), the period of limitations for assessing the respective section 6672 penalties for the quarters at issue in 2010 generally is the three-year period prescribed by section 6501(a). Section 6672(b)(3) extends that three-year period if a notice described in section 6672(b)(1) is delivered in person or is mailed to a taxpayer's last known address before the period of limitations prescribed by section 6501 expires without regard to section 6672(b)(3). In that event and as pertinent here, pursuant to section 6672(b)(3) the period of limitations prescribed by section 6501 will not expire before the date 90 days after the date on which the notice described in section 6672(b)(1) was delivered in person or mailed to a taxpayer's last known address.

The period of limitations under section 6501(a) for assessing any tax imposed by the Code begins running when the return required to be filed by the

[*44] taxpayer is filed. As pertinent here, section 6501(b)(2) provides that where a return for a period ending with or within a calendar year with respect to tax under chapter 21, Federal Insurance Contributions Act, or chapter 24, Collection of Income Tax at Source on Wages, of subtitle C is filed before April 15 of the succeeding calendar year, that return will be considered filed on April 15 of that succeeding calendar year.

Hollywood Arts was obligated to report in Form 941 its respective employment taxes under chapters 21 and 24 of subtitle C for each of the quarters at issue in 2010 (i.e., the quarters that ended on March 31, June 30, and September 30, 2010). Hollywood Arts was required to file Form 941 for each of those quarters by no later than the end of the month following each such quarter. See secs. 6011(a), 6071(a); sec. 31.6011(a)-4T(a)(1), Temporary Employment Tax Regs., 73 Fed. Reg. 79358 (Dec. 29, 2008); sec. 31.6071(a)-1(a)(1), Employment Tax Regs.

Hollywood Arts filed timely Form 941 for each of the quarters that ended on March 30 and September 30, 2010. It filed late on October 5, 2010, Form 941 for the quarter that ended on June 30, 2010. Pursuant to section 6501(b)(2), Form 941 that Hollywood Arts filed for each of the quarters ended on March 31, June 30, and September 30, 2010, is a return that is deemed filed on April 15, 2011. We conclude that the period of limitations prescribed by section 6501(a) for assessing

**[*45]** Hollywood Arts' employment taxes imposed by chapters 21 and 24 of the Code would have expired on April 15, 2014. We further conclude that the period of limitations for assessing the section 6672 penalties for the quarters at issue in 2010 also would have expired on April 15, 2014, without regard to section 6672(b)(3). See sec. 6671(a).

We have found that on February 4, 2014, the second revenue officer mailed to petitioner by certified mail petitioner's Letter 1153 which was addressed to petitioner's last known address. We hold that pursuant to section 6672(b)(3) the three-year period of limitations prescribed by section 6501(a) for assessing the section 6672 penalties for the quarters at issue in 2010, which would have expired on April 15, 2014, without regard to section 6672(b)(3), did not expire before May 5, 2014, the date which is 90 days after the date (i.e., February 4, 2014) on which petitioner's Letter 1153, the notice described in section 6672(b)(1), was mailed to his last known address. Respondent assessed petitioner's section 6672 penalties for the quarters at issue in 2010 on April 16, 2014. We hold that the period of limitations for assessing against petitioner the respective section 6672 penalties for the quarters at issue in 2010 had not expired as of the date on which respondent assessed those penalties.

**[*46]** On the record before us and pursuant to applicable sections of the Code, we reject petitioner's statute of limitations contention.

We consider finally petitioner's section 6751(b)(1) contention. However, we address initially respondent's position regarding the application of that section in this case. It is respondent's position that in a section 6320 or 6330 matter involving a section 6672 penalty it is not necessary under section 6330(c)(1) that the Appeals officer verify that the IRS complied with section 6751(b)(1). That is because, according to respondent, section 6751(b)(1) does not apply to a section 6672 penalty. Respondent further maintains that if we were to determine that section 6751(b)(1) applies to a section 6672 penalty, the record establishes that the IRS complied with section 6751(b)(1) before it assessed on April 16, 2014, the respective section 6672 penalties for the quarters at issue in 2010.

We need not determine whether respondent is correct that section 6751(b)(1) does not apply to a section 6672 penalty. That is because, as explained below, we find on the record before us that the second revenue officer did not abuse his discretion in concluding in the notice of determination that "[t]he requirements of applicable law or administrative procedures have been met and the actions taken or proposed were appropriate under the circumstances." See

[*47] Blackburn v. Commissioner, 150 T.C. __ (Apr. 5, 2018).  Our discussion below assumes that section 6751(b)(1) applies to a section 6672 penalty.

We begin our explanation of our finding that the second revenue officer did not abuse his discretion in concluding in the notice of determination that "[t]he requirements of applicable law or administrative procedures have been met and the actions taken or proposed were appropriate under the circumstances" by address-ing petitioner's section 6751(b)(1) contention.  According to petitioner,

> the 1153(DO) [petitioner's letter 1153] was dated and sent February 4, 2014 while the approved Form 4183 that respondent includes as Exhibit 17-R was dated April 4th, 2014. * * * Petitioner is clearly aware that this approval was obtained subsequent to the issuance [of the] proposed assessment of the penalty [in petitioner's Letter 1153] and perhaps the technical violation of [section] 6751(b)[(1)] if there is one at all is no more than a "foot fault".[19]

Section 6751(b)(1) provides that "[n]o penalty * * * shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination".  It is apparent that petitioner's section 6751(b)(1) contention is based on his assumption

---

[19]Pursuant to the parties' request, we ordered petitioner to file a seriatim opening brief, respondent to file a seriatim answering brief, and petitioner to file a seriatim reply brief.  Petitioner and respondent filed a seriatim opening brief and a seriatim answering brief, respectively.  Petitioner filed a notice of intent not to file a seriatim reply brief.  Petitioner does not contend that under sec. 6751(b)(1) group manager Nichter is not the immediate supervisor of the second revenue officer.  We conclude that petitioner has abandoned advancing any such argument.

**[*48]** that under section 6751(b)(1) the so-called initial determination of the assessment of a section 6672 penalty that requires approval by the immediate supervisor of the individual making such determination is Letter 1153, the letter that the IRS uses to propose the assessment of a section 6672 penalty against a responsible person.

Just as we concluded that we need not determine whether respondent is correct that section 6751(b)(1) does not apply to a section 6672 penalty, we conclude that we need not determine whether petitioner is correct that under section 6751(b)(1) the initial determination of the assessment of a section 6672 penalty is Letter 1153. That is because we find on the record before us that the supervisor's approval that section 6751(b)(1) requires took place before the second revenue officer mailed by certified mail on February 4, 2014, petitioner's Letter 1153 addressed to him at his last known address. Our discussion below assumes not only that section 6751(b)(1) applies to a section 6672 penalty but also that under section 6751(b)(1) the initial determination of the assessment of a section 6672 penalty that requires approval by the immediate supervisor of the individual making such determination is Letter 1153.

**[*49]** In advancing petitioner's section 6751(b)(1) contention, petitioner relies on brief[20] only on "Form 4183 that respondent includes as Exhibit 17-R [which] was dated April 4th, 2014". Petitioner ignores on brief the February 3, 2014 Form 4183 that we found the second revenue officer had prepared and that group manager Nichter had approved on February 3, 2014, before that officer mailed by certified mail on February 4, 2014, petitioner's Letter 1153 which was addressed to petitioner's last known address. The February 3, 2014 Form 4183 showed petitioner's name and Ms. Romanski's name under the heading on that form "Persons against whom the trust fund recovery penalty is being considered". The second revenue officer attached Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, to petitioner's Letter 1153. In that form, respondent proposed, inter alia, to assess against petitioner, as a "person responsible", the respective section 6672 penalties with respect to the quarters at issue in 2010.

It was not until March 26, 2014, that the second revenue officer concluded that Ms. Romanski should not be subject to any section 6672 penalty and noted in the integrated collection services history transcript maintained with respect to Hollywood Arts that Ms. Romanski did not meet what he characterized in that transcript as "the responsibility and willfulness test" of section 6672(a). Conse-

---

[20]But see infra note 22.

**[*50]** quently, he changed his original conclusion as to Ms. Romanski, but not as to petitioner, which appeared in the February 3, 2014 Form 4183 with respect to each of Hollywood Arts' quarters ended on (1) March 31, June 30, and September 30, 2010, and (2) March 31, June 30, and December 31, 2012, that he had prepared and submitted to group manager Nichter for approval on February 3, 2014, and which group manager Nichter approved on the same date.

On April 3, 2014, the second revenue officer consulted IRM pt. 5.7.4.7.2, titled "Rescission of Proposed Assessment", because he had changed his conclusion as to Ms. Romanski that appeared in the February 3, 2014 Form 4183. Also on April 3, 2014, the second revenue officer submitted a request to group manager Nichter for his approval (1) to amend the February 3, 2014 Form 4183 as to Ms. Romanski only by preparing another Form 4183 in which he would indicate that Ms. Romanski is not liable for the section 6672 penalty for each of Hollywood Arts' quarters at issue and (2) to prepare and issue Letter 1153W, the letter that the IRS used to rescind any Letter 1153 that it had previously issued to Ms. Romanski.

On April 3, 2014, the date on which group manager Nichter received the second revenue officer's request for approval to amend the February 3, 2014 Form 4183 as to Ms. Romanski only and to prepare and issue to her Letter 1153W, that

**[*51]** group manager approved that request. On the same date on which group manager Nichter approved the second revenue officer's request, that revenue officer prepared an amended Form 4183 which was amended only insofar as it pertained to Ms. Romanski (i.e., the April 4, 2014 amended Form 4183).[21] Although the second revenue officer showed in the April 4, 2014 amended Form 4183 under the heading "Persons against whom the trust fund recovery penalty is being considered" petitioner's name and Ms. Romanski's name, he also showed under Ms. Romanski's name the following pertinent language: "Ms. Romanski is not liable for the TFRP [trust fund recovery penalty]."

On April 4, 2014, the second revenue officer signed and submitted the April 4, 2014 amended Form 4183, which was amended as to Ms. Romanski only, to group manager Nichter for his approval. On the same date, that group manager approved the April 4, 2014 amended Form 4183.

On April 8, 2014, the second revenue officer mailed Ms. Romanski's Letter 1153W to Ms. Romanski.

---

[21]As was of true of the February 3, 2014 Form 4183, the amended Form 4183 pertained not only to the quarters at issue but also to Hollywood Arts' quarter ended on December 31, 2010. As discussed above, the second revenue officer did not include that quarter in Form 2751 attached to petitioner's Letter 1153.

[*52] On the record before us, we find that group manager Nichter approved on February 3, 2014, petitioner's Letter 1153 that the second revenue officer mailed by certified mail on February 4, 2014, to petitioner at his last known address.[22] On that record, we further find that the IRS complied with the requirements of section 6751(b)(1).

Based upon our examination of the entire record before us and petitioner's concessions, we find that the Appeals Office did not abuse discretion in making the determinations in the notice of determination. On that record, we hold that we will sustain the determinations in that notice.

_____

[22]By Order dated February 15, 2018 (February 15, 2018 Order), we gave the parties the opportunity, by ordering them to file respective responses to that order, to supplement their respective views on brief, in the light of Graev v. Commissioner, 149 T.C. ___ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016), regarding petitioner's contention on brief that sec. 6751(b)(1) applies to the section 6672 penalty and that the IRS did not satisfy sec. 6751(b)(1) in this case. On April 18 and April 19, 2018, respondent and petitioner, respectively, filed their respective responses to our February 15, 2018 Order. In his response to our February 15, 2018 Order, petitioner now acknowledges that group manager Nichter signed on February 3, 2014, the original Form 4183 that the second revenue officer had prepared, in which he showed both petitioner and Ms. Romanski as "Persons against whom the trust fund recovery penalty is being considered". Petitioner further acknowledges in that response that group manager Nichter thereby approved on February 3, 2014, petitioner's Letter 1153 that the second revenue officer mailed to petitioner on February 4, 2014.

**[*53]** We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the parties' respective concessions,

<u>An appropriate decision will be entered</u>.